William CASWELL, Appellant,

v.

Joseph RYAN (Superintendent);
Attorney General of the State
of Pennsylvania.

No. 91–5003.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
Rule 12(6) Oct. 1, 1991.

Decided Jan. 13, 1992.

William S. Houser, Scranton, Pa., for appellant.

Karen Tomaine, Office of Dist. Atty., Scranton, Pa., for appellee.

Before SLOVITER, Chief Judge, COWEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

We are once again called upon to examine the actions taken by a state prisoner in state court to determine whether he fulfilled his obligation to exhaust state remedies and avoid procedural defaults as required before a federal court can consider the merits of his petition for a writ of habeas corpus.

William Caswell, a prisoner in state custody, appeals to this court from the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

### I.

### Background Facts and Procedural Posture

On May 13, 1980, Caswell was arrested on various state charges relating to five separate armed robberies. There were four separate trials in the Court of Common Pleas, Lackawanna County, Pennsylvania between September, 1980 and April, 1981 and Caswell was convicted each time. The present matter arises out of Caswell's conviction on February 23, 1981, for robbery, conspiracy, theft, receiving stolen property and firearms violations with regard to the robbery of "Bill's Market" in Daneville, Pennsylvania on April 12, 1980.

Caswell claims that during the course of the proceedings in this and the other cases, he became dissatisfied with his trial attorney. On August 14, 1980, he filed a motion requesting new counsel, which the Court of Common Pleas denied on November 6, 1980. Caswell further claims that his disagreements with his trial counsel continued after the denial of this motion, and that his attorney refused his requests to oppose three Commonwealth motions made under Rule 1100 of the Pennsylvania Rules of Criminal Procedure [1] for extensions of time within which to bring Caswell to trial.[2]

After Caswell's conviction, but prior to sentencing, the trial court did appoint new counsel for Caswell. Caswell was sentenced to a term of ten to twenty years, and his petition for reconsideration of sentence was denied. On direct appeal within the state system, judgment of his sentence was affirmed, and Caswell's petition for allocatur to the Pennsylvania Supreme Court was denied.

Thereafter, Caswell filed a pro se petition in the Court of Common Pleas under the Pennsylvania Post Conviction Hearing Act (PCHA), 42 Pa.Cons.Stat.Ann. § 9541 et seq. (1982),[3] in which he claimed that the ineffective assistance of his trial counsel amounted to a violation of his Sixth Amendment right to a fair trial. Caswell based his ineffective assistance of counsel charge on several grounds, including, inter alia, failure to challenge all Commonwealth extension motions under Rule 1100 (Rule 1100 Extension); failure to file for a mistrial when one of the Commonwealth's witnesses talked to the jury during a recess (Improper Juror Contact);[4] failure of trial counsel to withdraw from the case (Irretrievable Breakdown) and failure to file a sequestration order because of publicity

---

1. Rule 1100 requires that trial of an incarcerated defendant "commence no later than one hundred and eighty (180) days from the date on which the complaint is filed." The Rule excuses delay when "the Commonwealth [has] exercised due diligence and the circumstances occasioning the postponement were beyond [its] control...." Pa.R.Crim.P. 1100.

2. According to the record Caswell's trial counsel did oppose the first Commonwealth motion for extension of time, App. at 91, but he decided not to oppose the two subsequent motions for extension because, as he testified he was satisfied that the Commonwealth was proceeding diligently.

3. The PCHA was replaced by the Post Conviction Relief Act in 1988. 42 Pa.Cons.Stat.Ann. § 9541 et seq. (Purdon Supp.1991).

4. In his habeas petition and supporting brief, Caswell claims that he observed a key Commonwealth witness, Mrs. Ann Watson, speaking to jurors in the hallway of the courthouse during a trial recess, and that the witness was "perceived loudly espousing Caswell's guilt to a jury member, and later, this same witness was heard again loudly espousing Caswell's guilt to a Sheriff Deputy within earshot of several jurors." App. at 61.

surrounding the trial (Jury Sequestration). Caswell also alleged ineffectiveness of appellate counsel for not raising the issue of trial counsel ineffectiveness on direct appeal and claimed that the Commonwealth directly violated his rights to a speedy trial under both Rule 1100 and the U.S. Constitution. The Court of Common Pleas rejected Caswell's petition on the merits, concluding that neither trial nor appellate counsel was ineffective and further finding that Caswell's Rule 1100 rights had not been violated.

Caswell, with the help of new counsel, appealed this decision to the Pennsylvania Superior Court. In its opinion dated March 4, 1988, the Superior Court concluded, *inter alia,* that trial counsel was not ineffective because he had decided not to oppose the Commonwealth's second and third requests for extension under Rule 1100; that Caswell had presented no evidence at the PCHA hearing concerning the Improper Juror Contact claim beyond his own self-serving and uncorroborated allegations, which were directly contradicted by trial counsel; and that Caswell presented no evidence to show how failure of trial counsel to request jury sequestration had adversely affected his right to a fair trial. The Superior Court also found that the trial court did not abuse its discretion when it denied Caswell's August 14, 1980 motion for new counsel. Last, the Superior Court concluded that no ineffective assistance of counsel claim could be maintained against appellate counsel in the absence of a legitimate claim against trial counsel.

Under Rule 1113 of the Pennsylvania Rules of Appellate Procedure, Caswell had 30 days in which to file a petition for allowance of appeal to the state Supreme Court, which he failed to do.[5] Indeed, Caswell took no further action on his appeal for more than a year when, on July 28, 1989, he filed a "Petition for Permission to File

Petition for Review *nunc pro tunc*" in the Pennsylvania Supreme Court. In that petition Caswell raised the same claims that he had raised before the Court of Common Pleas and the Superior Court except that, inexplicably, Caswell failed to include the Improper Juror Contact claim. The Supreme Court denied his petition on October 10, 1989, without explanation.

Thereafter, on December 13, 1989, Caswell filed his petition for a writ of habeas corpus in the District Court for the Middle District of Pennsylvania, raising the following ineffective assistance of counsel claims: Irretrievable Breakdown; Rule 1100 Extension; Improper Juror Contact; Jury Sequestration; and a new claim, failure of trial counsel to seek individual voir dire.

By order of September 19, 1990, the district court *sua sponte* raised the question of exhaustion and directed Caswell to produce a copy of the *pro se nunc pro tunc* petition he had filed in the state Supreme Court. In its order of October 29, 1990, the court compared Caswell's federal habeas petition with that *nunc pro tunc* petition, noted that there was not complete exhaustion in that Caswell failed to raise before the state Supreme Court the claims on Improper Juror Contact and Individual Voir Dire, and directed Caswell to show cause for the default and prejudice resulting therefrom. Finally, in its order of December 20, 1990, the district court concluded that Caswell failed to exhaust the Improper Juror Contact claim because it was not included in the *nunc pro tunc* petition, that it would be futile under the Pennsylvania Post Conviction Relief Act to return to the state on that ground, and that Caswell failed to satisfy the cause and prejudice inquiry to excuse this procedural default because he failed to demonstrate good cause therefor. Accordingly, the court refused to address the merits of that claim.

---

5. The Superior Court decision was issued on March 4, 1988. On March, 10, 1988, Caswell wrote to appellate counsel requesting that the Superior Court's order be appealed. On March 23, 1988, Caswell's attorney wrote back, advising that an appeal would be frivolous and that he was petitioning the court to be removed as appointed counsel. On April 2, 1988, Caswell

sent a letter to the Prothonotary of the Pennsylvania Supreme Court alerting her of his desire to appeal and requesting appointment of counsel. On April 11, 1988, the Prothonotary wrote to Caswell advising him that any requests of the court should be made by way of petition addressed to the court.

The court determined that the Individual Voir Dire claim was separate from the Jury Sequestration claim and had not been exhausted. The court stated that the remaining claims had been exhausted, referring specifically to the Irretrievable Breakdown and Rule 1100 Extension claims.[6] The court rejected the Irretrievable Breakdown claim on the basis of the Magistrate Judge's findings that trial counsel had represented Caswell diligently. The court concluded that the Rule 1100 Extension claim constituted a matter of state procedural law, not "cognizable" in a federal habeas proceeding. Accordingly, it denied the petition for habeas relief.

Initially in his appeal to this court, Caswell raised all the issues he urged in the district court. However, on August 6, 1991, we granted Caswell's motion to withdraw the Individual Voir Dire claim. We will therefore limit our consideration to the remaining claims.

## II.

### Discussion

#### A.

##### General Principles

■■■ We note briefly the now well-established principle that, absent a valid excuse, a prisoner must first present all federal claims to state court before a district court may entertain a federal habeas petition. 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490–91, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973); *O'Halloran v. Ryan*, 835 F.2d 506, 509 (3d Cir.1987). Even though exhaustion is a matter of comity, rather than a jurisdictional requirement, *Rose*, 455 U.S. at 518, 102 S.Ct. at

1203, it "should be strictly adhered to because it expresses respect for our dual judicial system...." *Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir.1990).

In addition, if a state court has refused to consider a petitioner's claims because of a violation of state procedural rules, a federal habeas court is barred by the procedural default from considering the claims, *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Swanger v. Zimmerman*, 750 F.2d 291, 296 (3d Cir.1984).

As we have noted before, "[i]n a federal habeas proceeding, review of the district court's legal conclusions is plenary and factual findings in dispute are reviewed under the clearly erroneous standard." *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir.1989).

#### B.

##### Procedural Default

###### 1. *Nunc Pro Tunc* Claims

■■■ As is evident from the preceding discussion of the procedure followed in this case, Caswell urged the Rule 1100 Extension, Irretrievable Breakdown, and Jury Sequestration claims in his PCHA petition and at every level of review thereafter, but his petition to the Pennsylvania Supreme Court was some fifteen months late. Thus we must decide whether that delay should be treated as a procedural default in light of the Pennsylvania Supreme Court's unexplained denial of Caswell's *nunc pro tunc* petition.

This court conducted a similar inquiry in *Bond v. Fulcomer*, 864 F.2d 306 (3d Cir. 1989). Bond, who had failed to file a timely petition for review with the Pennsylvania Supreme Court in a direct appeal of a decision to revoke his probation, filed a *pro se* petition for allowance of appeal *nunc pro tunc*, raising the same issues he had

---

6. While the district court made no mention of the Jury Sequestration claim in any of its orders, the magistrate did consider this claim,

finding nothing in the record to support Caswell's contention. We conclude that the district court adopted this finding *sub silentio*.

advanced in the Superior Court. Following denial by the Pennsylvania Supreme Court without comment, Bond filed for habeas relief in federal district court.

The district court concluded that Bond had failed to exhaust his state remedies but we disagreed, holding that the claim was exhausted since it was fairly presented to the state courts, although in an untimely fashion. We then considered whether Bond had procedurally defaulted on his federal claims by not filing a timely appeal to the Pennsylvania Supreme Court. We looked to three factors:

> (1) whether the state court has used procedural default in similar cases to preclude review of the claim's merits; (2) whether the history of the case suggests that the state court was aware of the procedural default; and, (3) whether the state court opinions suggest reliance upon procedural grounds or a determination on the merits.

*Id.* at 310 (citations omitted).

Assessing each factor in turn, we concluded (1) that the Pennsylvania Supreme Court routinely dismissed untimely *nunc pro tunc* petitions on procedural grounds, even though one may occasionally be allowed when the appellant establishes that the failure to file a timely appeal "was the result of fraud or its equivalent or a breakdown in the court's operation," *id.;* (2) that the one year delay in filing the appeal as well as its designation as *nunc pro tunc* put the Pennsylvania Supreme Court on notice of the potential procedural default; and (3) that "since denials of petitions for untimeliness are not usually accompanied by opinion, we can conclude that the [supreme] court's one-line denial indicates reliance upon procedural grounds," *id.* at 311. As a result, we determined, "[g]iven the partiality for a finding of procedural default," *id.*, that the Pennsylvania Supreme Court denied Bond's petition for review because it was untimely.

In order "[t]o facilitate resolution of future claims presented in [similar] procedural posture[s]," we fashioned the following presumption:

> when a *nunc pro tunc* allocatur petition is perfunctorily denied without discussion, when its untimeliness is apparent, and when sufficient facts to override the general disallowance of extended times for appeal are absent in the petition, the denial of allocatur can be presumed to be based on a procedural default caused by its untimeliness.

*Id.*

We returned to the issues of exhaustion and procedural default in *Hull v. Freeman,* 932 F.2d 159 (3d Cir.1991). Hull's counsel failed to file a timely petition for allocatur to the Pennsylvania Supreme Court following denial of Hull's PCHA petition by the Court of Common Pleas and the Superior Court. Thereafter, Hull filed a *pro se* petition for allocatur *nunc pro tunc,* which the Supreme Court denied without comment. We determined, based on *Bond,* that Hull had complied with the exhaustion rule.

We reached a different conclusion on whether the state Supreme Court's dismissal of the *nunc pro tunc* petition was a decision on the merits, as distinguished from a procedural default. The *Hull* panel held that the Supreme Court's decision in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), issued a month after our decision in *Bond,* "undermines the *Bond* panel's treatment of the procedural default issue" and that therefore *"Bond* has ceased to be the law in this circuit." *Id.* at 166. In *Bond,* we had reasoned that ambiguity concerning the Pennsylvania Supreme Court's unexplained denial of a *nunc pro tunc* petition should be presumed to indicate procedural default. In light of *Harris,* the *Hull* panel reached the opposite conclusion—i.e., that such an unexplained decision was a merits ruling, and that therefore the district court was not precluded by the procedural default rule from reviewing Hull's habeas claim.

Following *Hull* the Supreme Court issued two decisions of relevance. We must therefore review the current status of this fast developing area of the law.

In *Harris v. Reed,* the Supreme Court had applied the "clear statement" rule of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct.

3469, 77 L.Ed.2d 1201 (1983), and *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), to federal habeas corpus review for the first time. The Court adopted this rule to simplify those situations in which ambiguity in a state court decision rendered it difficult for a reviewing federal court to determine whether the state court decision was based on an independent and adequate state ground, thereby precluding federal review.

In short, the *Long* presumption holds: "If 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement that [its] decision rests upon adequate and independent state grounds.'" *Harris,* 489 U.S. at 261, 109 S.Ct. at 1042 (quoting *Long,* 463 U.S. at 1042, 103 S.Ct. at 3477). In applying the rule to the habeas context, the *Harris* Court stated: "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. at 1043 (internal quotations omitted). Under the authority of *Harris,* we concluded in *Hull* that the denial of allocatur was a decision on the merits because the dismissal of Hull's *nunc pro tunc* petition did not "clearly and expressly" state that it rested on a state procedural ground, and we therefore proceeded to consider the merits of Hull's claim.

A month after the *Hull* decision, the Supreme Court decided *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2552, 115 L.Ed.2d 640 (1991), a case it introduced as one about federalism that "concerns the respect that federal courts owe the States' procedural rules when reviewing the claims of state prisoners in federal habeas corpus." Coleman, who had been convicted in Virginia of rape and capital murder and sentenced to death, filed a state habeas petition raising several federal constitutional claims. After denial of the petition by the trial court, Coleman filed a notice of appeal which was three days late and the Commonwealth filed a motion to dismiss the appeal on this ground. Although the parties thereafter briefed the merits as well as the motion to dismiss, the Virginia Supreme Court granted the Commonwealth's motion to dismiss Coleman's appeal.

Coleman then filed a petition for a writ of habeas corpus in federal court. Both the district court and the Court of Appeals held that Coleman had procedurally defaulted on the claims raised in state habeas. The Supreme Court agreed.

In so holding, the Supreme Court expressly limited the potential scope of the plain statement rule laid down in *Harris,* stating:

> [i]n habeas, if the decision of the last state court to which the petitioner presented *his federal claims* fairly appeared *to rest primarily on resolution of those claims, or to be interwoven with those claims,* and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

111 S.Ct. at 2557 (emphasis added). The Court rejected Coleman's argument that under *Long* and *Harris,* habeas would not be barred unless the state Supreme Court's order clearly and expressly stated that it was based in state procedure grounds. The Court stated that "Coleman reads *Harris* too broadly." *Id.* Instead, "[a] predicate to the application of the *Harris* presumption is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." *Id.*

It is evident from the foregoing that the Supreme Court's decision in *Coleman,* reinterpreting its ruling in *Harris,* in effect overrules our decision in *Hull,* and that we can no longer conclude that there has not been a procedural default merely because the state Supreme Court fails to clearly and expressly base its ruling on a state procedural ground. Instead, it was our earlier *Bond* opinion that accurately foreshadowed the Supreme Court's develop-

ment of the applicable legal principles. Therefore, before a federal habeas court decides that the state Supreme Court decision did not rest on the petitioner's procedural default, it must first determine whether the last state court to consider the case based its decision primarily on federal law or was interwoven with such law, in which event habeas would not be barred, or whether its judgment "fairly appears" to rest primarily on state law, *Coleman*, 111 S.Ct. at 2557, in which event there would be a procedural default.

*Coleman* was decided on the same day that the Supreme Court decided *Ylst v. Nunnemaker*, a case that addressed the question of "how federal courts in habeas proceedings are to determine whether an unexplained [state court] order ... rests primarily on federal law." —— U.S. ——, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). It determined that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* Thus, according to the Court, "[i]f an earlier opinion 'fairly appear[s]' to rest primarily upon federal law,' we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place." *Id.* (quoting *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991)). This rule, the Court reasoned, would facilitate the determination of whether a state court ruling rests on an independent and adequate state ground, which bars federal habeas review, or rests on federal law.

Later in its opinion, however, the Court explained that while this "look through" rule facilitates the determination of the basis of a state court decision, this presumption is not irrebuttable; "strong evidence can refute it." *Id.* at 2595. The Court then provided an instructive example of the type of evidence that may rebut the presumption: "it might be shown ... that, even though the last reasoned state-court opinion had relied upon a federal ground, the later appeal ... was plainly out of time, and that the latter court did not ordinarily

waive such a procedural default without saying so." *Id.*

Applying the rules laid down in *Coleman* and *Ylst* and the reasoning of *Bond,* we conclude that the prerequisites for the *Harris* presumption that federal law was the basis for the Pennsylvania Supreme Court action have not been met. The unexplained denial of the *nunc pro tunc* petition cannot be read to rest primarily on federal grounds.

As noted in *Bond,* in Pennsylvania "[p]ermission for untimely appeals is granted on a case by case basis and is clearly the exception, not the rule," 864 F.2d at 310, and therefore the more plausible interpretation of the Pennsylvania Supreme Court's denial of an untimely petition for review is that it deemed the petition to be procedurally barred. The facts surrounding Caswell's *nunc pro tunc* petition coincide with those of the *Ylst* Court's hypothetical. Caswell's petition was plainly beyond the 30 day limit for filing a notice of appeal, coming well over a year after the Superior Court decision. In addition, as we noted in *Bond,* the Pennsylvania Supreme Court does not ordinarily waive this type of procedural default. *See also, Hull,* 932 F.2d at 165 (recognizing that *nunc pro tunc* petitions are allowed only when there has been " 'fraud or its equivalent or a breakdown in the court's operation.' "). It follows that Caswell's claims of ineffective assistance of counsel based on the Rule 1100 Extension, Irretrievable Breakdown and Jury Sequestration issues are procedurally barred, and that Caswell must show cause and prejudice before they can be considered on the merits by a federal court.

### 2. *Improper Juror Contact*

■ Review of the relevant pleadings in this case reveals that although Caswell's PCHA petition had raised in both the Court of Common Pleas and the Superior Court the claim that counsel was ineffective in failing to press at trial the claim of Improper Juror Contact, Caswell did not include that claim in his *nunc pro tunc* petition to the Supreme Court. Once again, the issue

arises whether this claim has been exhausted and/or is procedurally barred. We are guided by our decision in *Beaty v. Patton,* 700 F.2d 110 (3d Cir.1983), and language from *Coleman.*

Beaty, like Caswell, directly appealed his conviction to Superior Court. Following affirmance of his conviction, the Pennsylvania Supreme Court denied Beaty's petition for allocatur, and Beaty then filed for PCHA relief. There was a hearing in the Court of Common Pleas which denied the petition, and the Superior Court affirmed. Thereafter, Beaty filed a petition for a writ of habeas corpus in the District Court for the Eastern District of Pennsylvania, never appealing the Superior Court's denial of his PCHA petition to the state Supreme Court.

In considering the habeas petition in *Beaty,* this court concluded that it would be futile for Beaty to file an appeal to the Pennsylvania Supreme Court because "[s]o far as our research has revealed, no such request has ever been granted after this long a delay [i.e. almost six years after the Superior Court decision]." *Beaty,* 700 F.2d at 112. We noted that "it would be fruitless to return the petitioner to state court, [and thus he has] satisfied the exhaustion requirement...." *Id.*

We concluded that "Beaty's failure to file a petition for allocatur in the Pennsylvania Supreme Court constitutes a procedural default that deprived the highest state court of an opportunity to consider his constitutional claims," *id.,* and remanded the case to the district court so that Beaty could demonstrate that the default was not a "deliberate bypass" of the state court. *Id.* at 113.[7] *Beaty* is somewhat similar to Caswell's situation because Caswell failed to include the Improper Juror Contact claim in his *nunc pro tunc* petition to the Pennsylvania Supreme Court. It has been over three and a half years since the

Superior Court rendered its decision. Therefore, it would also be fruitless to require Caswell to exhaust that claim through the Pennsylvania system. But, as the Court stated in *Coleman:*

> if the petitioner failed to exhaust state remedies and the court to which petitioner would , be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred ... there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

111 S.Ct. at 2557, n. 1. It follows that we must make the same cause and prejudice inquiry as to Caswell's procedural default on his Improper Juror Contact claim as we must make as to his other bases for claiming ineffective assistance of counsel.

### C.

### *Cause and Prejudice*

■ The district court addressed the procedural default issue only with respect to the Improper Juror Contact claim, and therefore its cause and prejudice analysis was limited to that claim. For the reasons set forth above, we need to make the cause and prejudice inquiry to all of the bases for Caswell's ineffective assistance of counsel claim. *See United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 443 (3d Cir.1982) ("the cause and actual prejudice standard applies to the failure to raise ineffective assistance of counsel claims in a manner complying with a reasonable state procedural rule limiting the time in which such claims may be raised.").

The underlying procedural default is Caswell's failure to file a timely petition for allocatur from the Superior Court's denial

---

7. In *Beaty* we directed the "deliberate bypass" inquiry required under *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In *Coleman,* the Supreme Court held that the *Fay* standard had been superceded by its subsequent decisions, and it made explicit that when a state prisoner has procedurally defaulted his federal claims in state court, "federal habeas review ... is barred unless the prisoner can demonstrate cause ... and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." 111 S.Ct. at 2565. The cause and prejudice standard stems from *Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506. The "fundamental miscarriage of justice" language appears in *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982).

of his PCHA petition. In *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), where the issue involved counsel's procedural default, the Court stated that "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." The same standard is also applicable to a prisoner's own default.

Caswell offers no explanation of an "external impediment." The absence of counsel is not enough. Although Caswell has not exhibited the skills of a seasoned attorney, he has shown ample legal sophistication with respect to the legal matters surrounding his case. He was able on his own to move in the trial court for a new attorney and he possessed the wherewithal to file a PCHA petition in the Court of Common Pleas of his own accord. He was able to put together a lengthy *nunc pro tunc* petition, federal habeas petition, and supporting briefs—all without the aid of counsel.

The record discloses that Caswell was made aware of the thirty-day time limit following the Superior Court decision in which to file an appeal. Indeed, Caswell knew enough to send a letter to the Prothonotary within the requisite thirty days formally asking that the court grant allowance of the appeal and appoint counsel. It is apparently the practice of the Pennsylvania Supreme Court not to docket such letters as petitions for allocatur, as the Prothonatary responded that the request "should be in the form of a petition addressed to the court" that "list[s] the fact(s) of the case, the reason(s) for your request(s) and the request(s)." App. at 103.

While it is true that Caswell received the Prothonotary's response after the thirty day appeal period had expired, Caswell nonetheless did nothing further on his appeal until over fifteen months later. It is unpersuasive for Caswell to argue, as he did in the district court, that he had shown cause and prejudice on the basis of his belief "that because time had expired to file a timely petition for review in the Pennsylvania Supreme Court, he could not ever file such a petition." App. at 61.

Caswell's only explanation as to "cause" is "the State Supreme Court's action in holding Mr. Caswell to a very strict compliance with Pennsylvania Supreme Court rules of procedure, and extending no liberal construction of Caswell's unartfully drawn petition for appointment of counsel and notice of appeal." App. at 60. This simply does not constitute sufficient "cause" to excuse failure to comply with the state's procedural rules. There is no allegation in this case that interference by officials hindered compliance with state procedures. *Cf. Brown v. Allen*, 344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469 (1953) (such interference constitutes justifiable cause). Failure to "bend the rules" does not constitute official interference.

Caswell has proffered no persuasive "external factor" for his failure to file his appeal earlier than 15 months after the Superior Court's order. He cannot now claim that his failure to file a more timely appeal to the Supreme Court was a result of his ignorance. Even if it were, ignorance alone does not constitute good cause.

Finally, we note that even the untimely withdrawal of Caswell's counsel following the decision of the Superior Court did not constitute cause to excuse procedural default. Ineffectiveness of counsel does not provide sufficient cause to excuse procedural default when counsel is not constitutionally mandated. As the Court wrote in *Coleman*, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." 111 S.Ct. at 2566 (citations omitted).

Inasmuch as Caswell has failed to show cause for his untimely petition seeking review in the Supreme Court *nunc pro tunc*, *a fortiori* Caswell has not shown cause for the failure to include in that petition the Improper Juror Contact issue as one of the bases for Caswell's ineffective assistance of counsel claim. The district court noted,

Caswell had prepared and filed a *pro se* petition under the PCHA which raised

the specific issue of the witnesses's contact with the jury. Thereafter, counsel was appointed who represented petitioner at a hearing in which the subject of jury contact was litigated. Counsel also prepared and briefed an appeal with the Pennsylvania Superior Court. While counsel withdrew his representation of petitioner because he believed a further appeal was unmerited, in connection with his pro se appeal to the supreme court, Caswell had the benefit of counsel's efforts, the superior court opinion and, most importantly, his own *pro se* petition. Order of Dec. 20, 1990, at 5–6.

We agree with the decision of the district court with respect to that claim. Because we have concluded that Caswell has failed to demonstrate adequate cause for his procedural default, we have no occasion to address the issue of prejudice.

### III.

### *Conclusion*

In summary, we conclude that Caswell has procedurally defaulted on all four of his ineffective assistance of counsel claims and has failed to identify justifiable cause for that default. It follows that he is now barred from urging these claims in a federal habeas petition, and that we are foreclosed from considering the merits. We will affirm the order of the district court dismissing his petition.