**Geraldo QUIRAMA, Petitioner,**

v.

**Robert MITCHELE, Respondent.**

No. 91 Civ. 7324 (LLS).

United States District Court,
S.D. New York.

April 30, 1992.

Geraldo Quirama, pro se.

Tyrone M. Powell, Asst. Atty. Gen., New York State Dept. of Law, New York City, for respondent.

## OPINION AND ORDER

STANTON, District Judge.

Petitioner Geraldo Quirama moves pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus, arguing that his state court conviction was constitutionally invalid because (1) his guilt was not proven beyond a reasonable doubt; (2) the trial court's charge to the jury on the topic of accomplice liability improperly omitted the requirement of shared mental culpability; and (3) his sentence violated the eighth amendment prohibition against cruel and unusual punishment.

## BACKGROUND

Quirama was arrested in part of a Drug Enforcement Administration (DEA) "buy and bust" operation. Arrested with him were Francisco Luna and Earl Walcott. All three were released on bail, but only Quirama remained to stand trial.

After a jury trial, Quirama was convicted on May 23, 1985 of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree and in the third degree. He was given the statutory mandatory minimum sentence, two concurrent terms of fifteen years to life imprisonment on the first degree charges, and five years to fifteen years imprisonment on the third degree charge. He appealed his conviction and sentence to the Appellate Division, First Department on the same three grounds that he now presents for federal habeas corpus relief. On February 28, 1989 the First Department affirmed his conviction, without an opinion. 147 A.D.2d 991, 538 N.Y.S.2d 887. The New York State Court of Appeals denied Quirama leave to appeal.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

Quirama argues that the evidence adduced at his trial was insufficient to prove

his guilt beyond a reasonable doubt. At trial Detective Jose Francescha, a DEA undercover officer, and Eduardo Flores, a confidential informant, who were both posing as buyers, identified Quirama as an active participant in the sale (Tr. 50–53; 454–59). Detective Francescha and Flores both testified that the sale was arranged by Luna and Walcott, that they first met Quirama at the time of the sale, that Luna introduced Quirama to them as his partner, that Quirama's role in the transaction was to guard Flores and the cocaine while Luna went with Francescha to get the money, and that, at various times during the transaction, Quirama assured Francescha that he was buying high quality cocaine (*Id.*). Francescha testified that after Quirama was arrested by the backup officers, who had instructions to arrest anyone near Flores, Francescha identified Quirama as a participant in the crime.

Quirama argues that this testimony was insufficient to rebut his own testimony that he was an innocent bystander to the transaction who got arrested only because the back-up unit was told to arrest anyone standing near Flores. He argues that the testimony of the backup officers failed to corroborate the testimony of Francescha and Flores, and, in some instances, even contradicted it. He argues that the arresting officers had not seen him participate in the crime, and none of them corroborated Francescha's testimony that Francescha identified him as a participant in the crime after he was arrested.

 Quirama's arguments are unavailing in the context of federal habeas review of a state conviction. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in the original).

The task is to ascertain whether the record evidence on which the trier of fact relied was of sufficient quality to support the verdict. Stated another way, a

jury verdict is to be upheld where, taking a view of the case most favorable to the government, there is substantial evidence to support it. Since it is the trier of fact that weighs the evidence, determines credibility and draws inferences from historic to ultimate facts, a federal court, in analyzing sufficiency, should not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." The habeas court is not to substitute its view of the evidence for that of the jury. Instead, it stands in the shoes of the state trial court, and must consider whether a rational trier of fact could properly find or infer that the accused is guilty beyond a reasonable doubt.

*Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984) (citations and footnote omitted).

A rational trier of fact could have credited the testimony of Francescha and Flores, despite its claimed lack of corroboration, and discredited Quirama's testimony, despite its claimed corroboration by other defense witnesses. Therefore, the evidence was sufficient to sustain the jury's verdict.

## II. THE JURY CHARGE ON ACCOMPLICE LIABILITY AND PETITIONER'S SENTENCE

Quirama argues that the judge's charge to the jury on the topic of accomplice liability violated his fourteenth amendment right to due process because it left the jury with the erroneous impression that it could convict him if the prosecution proved that he knowingly aided Luna and Walcott, even if it did not prove that he shared their intent to possess and sell cocaine. He argues that his sentence of fifteen years to life imprisonment violates the eighth amendment.

Respondent argues that these claims have been procedurally defaulted.

 Under New York law, a defendant must object to a judge's instruction to the jury before the jury begins to deliberate, or any objection with respect to the charge is waived. *See* CPL § 470.05(2); *People v. Thomas,* 50 N.Y.2d 467, 429 N.Y.S.2d 584, 586–88, 407 N.E.2d 430

(1980); *People v. Robinson,* 36 N.Y.2d 224, 228–29, 367 N.Y.S.2d 208, 211, 326 N.E.2d 784 (1975). Similarly, a defendant must challenge his sentence before the sentencing court, or his claim that it constitutes cruel and unusual punishment will not be considered on appeal. *People v. Ingram,* 67 N.Y.2d 897, 899, 501 N.Y.S.2d 804, 805, 492 N.E.2d 1220 (1986). At trial, Quirama's counsel did not object to the disputed jury charge. Counsel argued to the sentencing judge that the minimum sentence of fifteen years to life imprisonment should be imposed, and did not urge that the statute was unconstitutional as applied.

■ These two issues were first raised on appeal. The state argued in response that Quirama had not preserved either issue for appellate review, that the jury charge was proper, and that the sentence was not unconstitutional under the circumstances. The Appellate Division affirmed the conviction without an opinion, and did not indicate whether it was rejecting these two claims because of Quirama's failures timely to object, or because these federal constitutional claims were meritless. The New York State Court of Appeals denied leave to appeal.

It is established law that if the state court's affirmance rested on the independent and adequate state ground of Quirama's failure to abide by New York State's contemporaneous objection rule, these claims have been procedurally forfeited because Quirama's procedural default in the state court precluded state court review of their merits, and consideration of them by a federal court on collateral review is foreclosed unless Quirama shows both cause for his default and prejudice attributable thereto, or unless he shows that failure to consider the federal claims will result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

Until June 24, 1991, when the Supreme Court decided *Coleman* and *Ylst v. Nunnemaker,* — U.S. —, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), it was presumed, for the purpose of determining whether a federal constitutional claim was procedurally forfeited, that unless the last state court opinion rejecting a petitioner's claim rested explicitly on the procedural default, the state court had considered and rejected the claim on the merits, and federal habeas review was available. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In *Coleman,* the Supreme Court held that the *Harris* presumption does not automatically apply to ambiguous state court opinions or to state court dispositions which reject a petitioner's claim without comment. Instead it:

> applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision.

111 S.Ct. at 2559.

In *Hunter v. Aispuro,* 958 F.2d 955 (9th Cir.1992), the Ninth Circuit held:

> Reading a pro forma state court decision as relying on state procedural grounds when those grounds are argued to the state court and are dispositive is consistent with established practice. In the absence of other evidence, the normal presumption is that a state court will decide a case on state rather than federal grounds when both grounds are raised and both are dispositive.... Similarly, the usual presumption is that a state court, as all courts, will decide a case on non-constitutional grounds where possible; in this case that means state grounds, because federal grounds in a habeas case are perforce constitutional....
>
> Under the plain language of *Coleman,* as well as established prudential principals, we conclude that the state courts did not rely on federal law in making their decision and that, therefore, the decision rests on an independent and adequate state ground.

*See also Caswell v. Ryan,* 953 F.2d 853, 859–60 (3d Cir.1992).

Two courts in this circuit have considered this question, and both found that although

the state argued both procedural default and the merits of an issue on appeal, the state court's affirmance without an opinion was based on state procedural ground, and that federal collateral review was precluded because of the procedural forfeiture. *See Hartley v. Senkowski,* 1992 WL 58766, at \*4–\*8, 1992 U.S.Dist. LEXIS 3301, at \*10–\*23 (E.D.N.Y. March 18, 1992); *Wilson v. Riley,* 1991 WL 238177, at \*3–\*6, 1991 U.S.Dist. LEXIS 15902, at \*10–\*15 (S.D.N.Y. November 4, 1991).

*Hartley* and *Wilson* rely in part on *Martinez v. Harris,* 675 F.2d 51 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982), which involved the same issue: "how [to] construe silence on the part of the Appellate Division, when there is an adequate state procedural ground for sustaining the conviction." *Id.* at 54 n. 5.

In *Martinez,* petitioner claimed that his due process rights were violated in the state court because of a supplemental charge read to the jury during deliberations. Petitioner's counsel failed to object to the charge at trial, and the issue was raised for the first time before the Appellate Division. On appeal, the state argued that procedurally the issue was not preserved for review, and that on the merits the charge was proper. The Appellate Division affirmed the conviction without opinion and leave to appeal to the Court of Appeals was denied. Although it recognized that "some aspects of that instruction raise a problem, arguably of constitutional dimension," *id.* at 53, the Second Circuit held that the claim had been procedurally forfeited, and that federal collateral review was unavailable:

> we do not believe that the Appellate Division's silence evinces an intent to overlook the procedural error. The interest-of-justice jurisdiction under § 470.15 is not invoked routinely. Therefore, we feel justified in assuming that the Appellate Division does not exercise its discretion under that section and decide a case solely on the merits of a claim, unless it says so.

*Id.* at 54 (citation and footnote omitted).

In *Asherman v. Meachum,* 932 F.2d 137, 143–44 (2d Cir.1991), *vacated on other grounds,* 957 F.2d 978 (2d Cir.1992), the Second Circuit acknowledged that *Harris v. Reed* had supplanted *Martinez.* However, two months after *Asherman* was decided, the Supreme Court decided *Coleman,* and held that *Harris* applied only where a federal court had reason to believe that the last state court decision rested on federal constitutional grounds. In cases such as this, where there is no reason so to believe, *Harris* no longer applies. It therefore appears that courts in this circuit should once again follow *Martinez.* Consequently, Quirama's claims of an improper jury charge and cruel and unusual sentence are barred unless he can show both cause for the default and prejudice arising therefrom. *Coleman,* 111 S.Ct. at 2565. Quirama makes no showing of cause for the default.

The fundamental miscarriage of justice rule applies only to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). Because Quirama does not argue that federal review is necessary to prevent a fundamental miscarriage of justice, and because there is sufficient evidence in the record supporting the jury's finding of guilt, Quirama's claims that the judge's charge violated the fourteenth amendment and that his sentence violated the eighth amendment are not reviewable by this court. *Coleman,* 111 S.Ct. at 2568.

## CONCLUSION

The clerk of the court is directed to dismiss the petition in its entirety. Because the issue of procedural forfeiture is a substantial one which merits appellate review, a certificate of probable cause to appeal will issue.