NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3068
_____

MIGUEL GONZALEZ,
                              Appellant

v.

SUPERINTENDENT GRATERFORD SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF MONROE;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-11-cv-00955)
District Judge:  Hon. William J. Nealon, Jr.
_____

Argued
January 19, 2016

Before:   JORDAN, HARDIMAN, and GREENAWAY, JR., Circuit Judges

(Filed: July 19, 2016)
_____

Michael Wiseman, Esq.  [ARGUED]
P.O. Box 120
Swarthmore, PA  19081
     *Counsel for Appellant*

Mark S. Matthews, Esq.  [ARGUED]
Monroe County Office of District Attorney
610 Monroe St.– Suite 126
Stroudsburg, PA  18360
     *Counsel for Appellees*

_____

OPINION*
_____

JORDAN, Circuit Judge

Appellant Miguel Gonzalez appeals several orders of the United States District Court for the Middle District of Pennsylvania related to a petition for a writ of habeas corpus in which he claimed ineffectiveness of trial counsel. It is undisputed that Gonzalez never developed his ineffectiveness claims in state collateral proceedings, rendering such claims unexhausted and procedurally defaulted. The District Court denied Gonzalez's repeated requests for the appointment of counsel and dismissed Gonzalez's petition, concluding, in part, that Gonzalez failed to establish cause to overcome his procedural default. We agree and will affirm on those grounds.

## I. Background

Because we write solely for the parties,[1] we recite only those facts necessary to resolve this appeal. Appellant Miguel Gonzalez is an inmate in a Pennsylvania state prison serving a life sentence without the possibility of parole for convictions arising from the murder of his girlfriend. During trial, after the presentation of the prosecution's forensic evidence, Gonzalez's lead trial counsel, Wieslaw Niemoczynski (Chief Public

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Michael Wiseman, Gonzalez's attorney for purposes of this appeal, initially entered his appearance as *pro bono* counsel and was subsequently appointed under I.O.P 10.3.2 and the Criminal Justice Act. We express our appreciation to Mr. Wiseman for his willingness to take this matter on and for his exemplary advocacy.

Defender for Monroe County), expressly acknowledged, in front of the jury, that such evidence indicated that Gonzalez shot the victim with the gun recovered from the crime scene. Thereafter, Gonzalez testified in his own defense, denying that he had been the shooter. The discrepancy between trial counsel's admission and Gonzalez's own testimony forms the basis for Gonzalez's ineffective assistance of counsel (IAC) claim. On October 7, 2008, the jury found Gonzalez guilty of first degree murder and related charges.

In his direct appeal to the Pennsylvania Superior Court, Gonzalez continued to be represented by trial counsel and raised claims related to various trial rulings, including the trial court's failure to instruct the jury on lesser degrees of homicide. The Superior Court affirmed on December 30, 2009. The Pennsylvania Supreme Court denied Gonzalez's petition for appeal on July 14, 2010, and he did not petition the Supreme Court of the United States for a writ of certiorari.

On October 12, 2010 – 90 days after the Pennsylvania Supreme Court denied the petition for leave to appeal – the limitations period began to run for both the Antiterrorism and Effective Death Penalty Act (AEDPA) and Pennsylvania's Post Conviction Relief Act (PCRA). 42 Pa. Cons. Stat. § 9545(b)(3); 28 U.S.C. § 2244(d)(1)(A); S. Ct. R. 13; *see also Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999) (holding that a state court criminal judgment is "final" for purposes of collateral attack in federal court at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires). The one-year window for filing a PCRA petition closed on October 12, 2011. *See* 42 Pa. Cons. Stat. § 9545(b)(1).

3

On December 9, 2010, only 58 days after the PCRA clock began to run, Gonzalez filed a *pro se* petition for federal habeas relief in the United States District Court for the Eastern District of Pennsylvania. Five months later, on May 2, 2011, a paralegal employed with the Monroe County Public Defender Office sent Gonzalez a letter (the "May letter") stating:

> Attorney Wieslaw Niemoczynski asked me to write you a letter instructing you to file a Pro Se PCRA Petition. This is your last chance to have your issues heard so you should file this petition immediately. *You should use the issues that Attorney Niemoczynski put in your appeal in the petition that you file.*

(A198 (emphasis added).) Meanwhile, on May 13, 2011, the federal habeas case was transferred to the United States District Court for the Middle District of Pennsylvania.

Critical to the issues raised in this appeal, Niemoczynski and another Monroe County Public Defender sent Gonzalez a second letter on June 30, 2011 (the "June letter"), almost two months after the May letter, stating in pertinent part:

> I am writing in regards to the last further action possible to pursue the claims in your case. Your state appeal was exhausted on July 14, 2010. *The last possible avenue for you to address your claims is in Federal Court.* Our office does not practice in Federal Court. However, we wanted to assist you in furthering your federal claims if you wish to do so because we firmly believe a significant federal constitutional right of yours to present an expert witness on your behalf was denied by the trial court. I am enclosing a petition for habeas corpus relief. The petition is filled out with the information available to us in our office. You need to sign the petition. … The information needs to be filed by July 14, 2011.[2]

(A199 (emphasis added; original emphasis omitted).) Notwithstanding the representations in that letter, as of June 30, 2011 Gonzalez still had approximately 104

---

[2] The June letter appears to have omitted from its limitations calculation the 90-day period for seeking certiorari review in the Supreme Court of the United States.

4

days to raise his IAC claims in a court of the Commonwealth via PCRA proceedings. Gonzalez never initiated such proceedings and, as mentioned above, the PCRA limitations period expired on October 12, 2011.

Between November 25, 2011 and May 16, 2013, Gonzalez filed three requests for the appointment of counsel, which the District Court denied on December 16, 2011, April 27, 2012, and February 12, 2014, respectively. On January 11, 2012, the Commonwealth filed its answer to Gonzalez's petition for federal habeas relief along with a supporting memorandum, arguing principally that Gonzalez had failed to exhaust his claims in state court through PCRA proceedings. On December 4, 2012, Gonzalez filed a brief in support of his petition for habeas relief (as described by the District Court, the "traverse").

In the traverse, Gonzalez "concede[d] that this matter should have been filed [in Pennsylvania state court] pursuant to the [PCRA]" (A157), but explained that he "did not pursue exhausting the PCRA remedy process" because several "circumstances existed that rendered the State PCRA remedy process ineffective to protect [his] rights … ." (*Id.*) First, Gonzalez stated that pursuing PCRA remedies "would have required the appointment of PCRA counsel, from the same office where Niemoczynski is [c]hief public defender," resulting in "an actual conflict of interest" because Gonzalez "asserts claims of ineffective assistance of counsel against Niemoczynski." (A159.) Gonzalez explained that he "would not consent to this type of representation, as such representation would be against his wishes … . Thus, [Gonzalez] did not pursue the Commonwealth's PCRA remedy." (A160.) Second, Gonzalez alleged that "an unsophisticated and

5

incompetent jailhouse lawyer misinformed and misled [him] to believe that all of his State appeals have been exhausted" because "the Commonwealth's PCRA remedy was also included in the exhausted State appeals." (A160.) Third, he faulted Niemoczynski for "attempt[ing] to exhaust [Gonzalez's] State PCRA remedies[] with useless and frivolous issues" already raised on direct appeal (A163). Fourth, Gonzalez claimed that he believed that "the last possible avenue for him to address his claims … was in federal court" (A163-64), because Niemoczynski's June letter told him that "his State appeal was exhausted," which led Gonzalez to "believe[] that said exhausted appeal included the PCRA appeal" (A163).

The District Court denied Gonzalez's habeas petition for failure to exhaust state remedies and concluded that he failed to qualify for any exception for his procedural default, as he had not alleged either cause and prejudice or a fundamental miscarriage of justice. *Gonzalez v. Pennsylvania*, No. 4:CV-11-0955, 2014 WL 2090699, at *3 (M.D. Pa. May 16, 2014). Gonzalez timely appealed, and we granted a certificate of appealability on the following issues: "(1) whether the District Court erred in ruling that Gonzalez failed to show cause and prejudice to overcome procedural default in his ineffective assistance of counsel claims;[3] and (2) whether the District Court abused its discretion in denying Gonzalez's requests for appointment of counsel." (A19.)

---

[3] The Appellees appear to misunderstand both the scope of our certificate of appealability and the structure of federal habeas itself, devoting a significant amount of their attention, both in their briefing and at oral argument, to the unasked question of whether Gonzalez can establish a fundamental miscarriage of justice by showing that he is actually innocent. (*See, e.g.*, Appellees' Br. 9-12.) Indeed, at oral argument, counsel for the Appellees seemed to operate from the mistaken assumption that he could rebut

6

## II. Discussion[4]

Gonzalez concedes that his "claim regarding a deprivation of counsel, and ineffective assistance of counsel … was not presented to the state courts and was therefore procedurally defaulted." (Appellant's Br. 25.) Nevertheless, he argues that he "presented the Court with more than ample 'cause' to excuse [his] default." (Appellant's Br. 26.) The question is close, but we conclude that he falls short of showing cause.

The existence of cause to excuse a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the defense's[5]] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The Supreme Court later clarified in *Coleman v. Thompson* "that 'cause' under the cause and prejudice test must be something *external* to the

---

Gonzalez's cause and prejudice arguments by turning immediately to actual innocence. Because all indications suggest that the Appellees have conflated two separate lines of habeas inquiry, we think it worth emphasizing that a petitioner can overcome the procedural default of his claims by showing *either* cause and prejudice *or* a fundamental miscarriage of justice, and that such inquiries are separate and distinct from one another. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Because our certificate of appealability concerned only the former inquiry and not the latter, the question of Gonzalez's actual innocence does not enter into our analysis.

[4] The District Court had jurisdiction to consider Gonzalez's IAC claim under 28 U.S.C. § 2254(a) but concluded that he failed to qualify for any exception that would excuse his procedural default. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). Our review of the District Court's legal conclusions, including its determinations regarding exhaustion and procedural default, is plenary. *Holloway v. Horn*, 355 F.3d 707, 713 (3d Cir. 2004). We review the denial of a request for counsel for an abuse of discretion. *Reese v. Fulcomer*, 946 F.2d 247, 253 (3d Cir. 1991), *superceded on other grounds by statute*, 28 U.S.C. § 2254(d).

[5] Although *Murray v. Carrier* says "impeded *counsel's* efforts," 477 U.S. 478, 488 (1986) (emphasis added), we have recognized that "[t]he same standard is also applicable to a prisoner's own default." *Caswell v. Ryan*, 953 F.2d 853, 862 (3d Cir. 1992).

7

petitioner, something that cannot fairly be attributed to him … ."  501 U.S. 722, 753 (1991).  Thus, "a showing that the factual or legal basis for a claim was not reasonably available to [the defense], or that some interference by officials made compliance impracticable, would constitute cause under this standard."  *Murray*, 477 U.S. at 488 (internal quotation marks and citations omitted); *see, e.g.*, *Mayberry v. Petsock*, 821 F.2d 179, 184-85 (3d Cir. 1987) (concluding that a prisoner's failure to exhaust state remedies would be excused if he could establish that prison officials, through obstruction, rendered state procedures unavailable to him).

In *Martinez v. Ryan*, the Supreme Court qualified its holding in *Coleman* by recognizing a "narrow exception" whereby "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  132 S. Ct. 1309, 1315 (2012).  When a state requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of the IAC claim if (i) "the state courts did not appoint counsel *in the initial-review collateral proceeding*," or (ii) "appointed counsel *in the initial-review collateral proceeding* … was ineffective under the standards of *Strickland v. Washington* … ."  *Id*. at 1318 (emphasis added).  However, the Supreme Court stressed that its holding in *Martinez* was a "limited qualification" to *Coleman*, *id*. at 1319, and that "[t]he rule of *Coleman* governs in all but the *limited circumstances recognized here*," *id*. at 1320 (emphasis added).  There is nothing in the record indicating that Gonzalez filed a petition for state postconviction relief, and Gonzalez has admitted as much.  Thus, the Commonwealth had no occasion to appoint

8

postconviction counsel in an initial-review collateral proceeding. Given that Martinez's narrow exception, by its express terms, applies when (1) the state fails to appoint counsel in an initial-review collateral proceeding or (2) when counsel appointed in such a proceeding is ineffective, *Martinez* does not provide "cause" to excuse Gonzalez's procedural default.[6]

Moreover, Gonzalez cannot show that some objective factor external to him impeded his efforts to comply with the state's procedural requirements. To the contrary, the record does not reflect that Gonzalez made any effort to initiate PCRA proceedings at all. Indeed, Gonzalez admits in his traverse that he never actually intended to initiate PCRA proceedings due to his belief that the same public defenders that served as his trial counsel would have been appointed to represent him. The traverse candidly explains that, due to Gonzalez's own "reasonable belief" that his PCRA attorneys would have had a conflict of interest, he "would not consent to this type of representation" and "[t]hus … did not pursue the Commonwealth's PCRA remedy." (A159-60.) Setting aside the accuracy of his belief, even if sincere, Gonzalez has not described an "objective factor external to the defense," *Murray*, 477 U.S. at 488, which would constitute cause, but rather a personal decision not to exhaust PCRA remedies. Likewise, even accepting as

---

[6] Interpreting *Martinez* to provide "cause" for prisoners who never initiated state collateral proceedings at all would render that holding neither "narrow" nor "limited," but would make the exception swallow the rule by allowing a ready means of bypassing state collateral proceedings altogether. Given the primacy of state collateral proceedings under AEDPA review, we do not think the narrow holding of *Martinez* was intended to overturn that process by eliminating such a compelling incentive to exhaust state remedies.

9

true Gonzalez's explanation that a "jailhouse lawyer" gave him bad advice about the exhaustion of his PCRA remedies (A160), we cannot say that his decision to credit informal advice – given not just outside an attorney-client relationship, but beyond any constitutional right to counsel – constitutes an objective impediment that would excuse his default, *see Coleman*, 501 U.S. at 753.

Gonzalez's strongest ground for establishing cause is the public defenders' June letter, which urged him into federal court as "[t]he last possible avenue for [him] to address [his] claims … ." (A199.) That letter is remarkably misleading and indicates no awareness either of Gonzalez's potential IAC claims or of the continuing availability of state collateral proceedings – proceedings that were both the necessary vehicle for raising those claims and a prerequisite to seeking federal remedies. Had the public defenders been in an attorney-client relationship with Gonzalez at the time,[7] and had their advice actually precipitated Gonzalez's decision to bypass PCRA proceedings in favor of federal

_____

[7] It is clear that neither the Monroe County Public Defender generally, nor Niemoczynski specifically, was in an attorney-client relationship with Gonzalez at the time of the June letter. The Pennsylvania Supreme Court denied leave to appeal on July 14, 2010, and the window to petition for certiorari closed 90 days later on October 12, 2010, ending Gonzalez's direct appeal proceedings. Thereafter, the May letter from a paralegal in the public defender's office directed Gonzalez to "file a Pro Se PCRA Petition," indicating that the defender's office was no longer representing Gonzalez. (A198.) Although the June letter sought to "assist [Gonzalez] in furthering [his] federal claims," it also makes clear that Gonzalez would have to file the enclosed federal habeas petition *pro se* because "[o]ur office does not practice in Federal Court." (A199.) And, of course, as Gonzalez's former trial and appellate counsel, the Monroe County Public Defender's office would have been conflicted out of any PCRA claim alleging IAC during trial or direct appeal. Thus, neither Niemoczynski nor his office was acting – or could have acted – as Gonzalez's counsel of record at the time of the June letter.

10

court, Gonzalez might have more credibly argued for cause based on an error so egregious as to constitute constitutionally ineffective assistance.[8]  *See Murray*, 477 U.S. at 488.

However, such is not the case here.  The public defenders were not representing Gonzalez when they sent the June letter.  Moreover, their advice cannot be said to have "*impeded* [*his*] *efforts* to comply with the State's procedural rule."  *Murray*, 477 U.S. at 488 (emphasis added).  Simply put, the record does not show that Gonzalez made any such efforts, nor does it suggest that he ever intended to do so.  By the time Gonzalez received the June letter, seven months had already passed since he initiated federal proceedings, and approximately two months had passed since the May letter

---

[8] This case is unusual inasmuch as Gonzalez attempts to establish cause based on his attorneys' acts occurring *after* their official representation had concluded.  Generally speaking, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause'" because "the attorney is the prisoner's agent" and, under agency law principles, "the principal bears the risk of negligent conduct on the part of his agent."  *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012).  Thus, where a defendant is represented by counsel, he is required "to bear the risk of attorney error that results in a procedural default" *unless* that error rises to the level of constitutionally ineffective assistance of counsel under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Murray*, 477 U.S. at 488.  As the Supreme Court explained in *Coleman*, "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation," and "there is no [constitutional] right to counsel in state collateral proceedings."  501 U.S. at 755.  Although he had no postconviction counsel, Gonzalez relies on *Maples* to advance the argument that the bad advice of his *former* attorneys was "external" to him, and thus established cause for his default.  (Appellant's Br. 28.)  In *Maples*, the Supreme Court reasoned that, notwithstanding *Coleman*, attorney error short of ineffective assistance can be "external" to the defense for purposes of establishing cause when the principal-agent relationship is severed, so that the "attorney no longer acts, or fails to act, as the client's representative."  132 S. Ct. at 923.  *Maples* cannot help Gonzalez, however, not because the public defenders' advice was not external to him, nor because the advice was not bad, but because, as already noted and as further described herein, Gonzalez fails to show that the advice "caused" his procedural default.

11

recommended he file a PCRA petition. Thus, the record shows that, when the bad advice of the June letter arrived, Gonzalez was already pursuing federal remedies. Further, the statements in his traverse indicate that Gonzalez made a deliberate decision to follow that path in lieu of initiating PCRA proceedings. Against that factual backdrop, Gonzalez has an uphill battle to establish that his failure to file a PCRA petition was "caused" by the public defenders' misadvice, and was not the result of his own decision to forego state postconviction proceedings.

This he fails to do. Neither his actions following the filing of his federal habeas petition nor his current assertions give us a basis from which to conclude that the June letter thwarted even a tentative reversal of Gonzalez's strategy to pursue federal remedies rather than state ones. Gonzalez stresses that, at the time he received the June letter, "there was still time for [him] to file a PCRA petition." (Appellant's Br. 29; *see also* Reply Br. 4.) However, his arguments stop short of asserting that he had any inclination to go back to state court or that the June letter actually dissuaded him from doing so – a conspicuous but understandable omission given Gonzalez's candid explanation that he chose to bypass PCRA proceedings because he considered the state-based process to be a less-desirable remedy. (*See, e.g.*, A157 ("Upon reasonable belief, [Gonzalez] asserts that circumstances existed that rendered the State PCRA remedy process ineffective to protect the rights of [Gonzalez] in the Court of Common Pleas of Monroe County, Pennsylvania … and therefore, [Gonzalez] did not pursue exhausting the PRCA remedy process.").)

In short, even recognizing the June letter as a factor external to the defense, the record does not support the conclusion that the letter impeded any effort to comply with

12

PCRA procedures. The letter could not serve as an impediment for efforts which Gonzalez has not alleged, much less shown, to have actually existed. Because Gonzalez must establish both cause and prejudice to overcome his procedural default, his inability to show cause is fatal to his habeas petition, rendering moot the issue of whether the District Court abused its discretion in denying his requests for counsel.

## III. Conclusion

We will affirm the District Court's May 16, 2014 order denying Gonzalez's petition for habeas relief. With respect to the District Court's December 16, 2011, April 27, 2012, and February 12, 2014 orders denying Gonzalez's requests for appointment of counsel, we will dismiss the appeal as moot.