Joseph WHITE, Petitioner,

v.

Supt. Morisa LAMAS, et
al., Respondents.

Civil Action No. 11–2339.

United States District Court,
E.D. Pennsylvania.

Sept. 12, 2012.

Raheem S. Watson, Conrad O'Brien, Philadelphia, PA, Walter S. Batty, Swarthmore, PA, for Petitioner.

Susan Elizabeth Affronti, Philadelphia District Attorneys Office, Philadelphia, PA, for Respondents.

## MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

Presently before the Court is a Petition for Writ of Habeas Corpus (the "Petition") filed by Joseph White ("White"), a state prisoner, pursuant to 28 U.S.C. § 2254. Magistrate Judge Thomas J. Rueter filed a Report and Recommendation ("R & R") in this matter recommending that the Petition be granted and White re-sentenced by the Commonwealth of Pennsylvania (the "Commonwealth") within ninety (90) days of an order granting the Petition. For the reasons which follow, we approve and adopt this R & R in its entirety.

## I. BACKGROUND

On November 13, 2008, White was found guilty after a jury trial in the Philadelphia Court of Common Pleas of homicide by vehicle while driving under the influence and driving under the influence of alcohol or a controlled substance.[1] White's convictions involved the death of sixteen-year-old Benjamin Lipsky who was leaving Synagogue services with his family when he

---

1. A complete procedural history, including the facts surrounding White's convictions, is set forth in Magistrate Judge Rueter's R & R, *Joseph White v. Supt. Morisa Lamas, et al.,* Civil Action No. 11–2339, Report and Recommendation, filed Aug. 17, 2012.

was struck by White's vehicle in the parking lane of a street in Philadelphia. On January 9, 2009, now-retired Judge Renee Cardwell Hughes sentenced White to an aggregate sentence of five to ten years imprisonment.

Subsequently, White filed a motion for a new trial and to arrest judgment, which was denied by the court on January 22, 2009. (*See* Mot. for Arrest of J./New Trial ¶¶ 5–6.) White then filed a notice of appeal to the Pennsylvania Superior Court raising five claims for review including the claim that he was "entitled to a remand to the Sentencing Court for a new Sentencing Hearing, where the Court abused its discretion in imposing sentence and where the sentence imposed was excessive and harsh under the circumstances and where the Court had expressed its bias against the type of case before it and where the Court failed to consider mitigating factors before it." (Resp. Habeas Pet., Ex. C at 3–4.) The Superior Court affirmed the judgment of sentence in an opinion dated March 31, 2010. *See Commonwealth v. White,* No. 512 EDA 2009, 996 A.2d 559 (Pa.Super.2010.) The Supreme Court of Pennsylvania denied White's request for discretionary review on August 4, 2010. *Commonwealth v. White,* 607 Pa. 691, 3 A.3d 671 (2010) (Table).

On April 4, 2011, White filed the instant Petition pro se and raised a single claim asserting that his sentence was excessive. The Commonwealth filed a Response to the Petition on December 5, 2011. Magistrate Judge Rueter subsequently appointed counsel to represent White, and counsel filed a memorandum in support of the Petition on April 13, 2012. The Commonwealth filed a Supplemental Response to this memorandum on July 16, 2012. On August 20, 2012, Magistrate Judge Rueter issued his R & R recommending that the Petition be "conditionally granted so that the state court can re-sentence petitioner

in accordance with the Constitution." (R & R at 27.) Magistrate Judge Rueter further recommended that this Court order the Commonwealth to release White from Custody should he not be re-sentenced within ninety (90) days of the date of an order granting the writ of habeas corpus. (*Id.*) The Commonwealth filed objections to the R & R on August 31, 2012.

## II. DISCUSSION

When a Magistrate Judge has issued a R & R for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court "shall make a de novo determination of those portions of the recommendation to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendation made by the magistrate." 28 U.S.C. § 636(b).

The Commonwealth objects to the R & R on the following grounds: (1) Petitioner has provided no evidence of "actual vindictiveness" and the R & R misapplied relevant precedent; (2) the state court adjudicated all of the sentencing claims before it, and Petitioner is not entitled to de novo review; and (3) Petitioner's claim is procedurally defaulted because he did not fairly present it to the state court. (Doc. No. 41).

We have carefully considered the objections raised by the Commonwealth. We have also thoroughly reviewed the applicable case law relevant to each objection, and find that they have no merit. The R & R properly addressed Petitioner's lone sentencing claim and the issues involving its presentation to the state courts. Accordingly, we find no reason to expound on Magistrate Judge Rueter's well-reasoned and comprehensive R & R, and thus, we

adopt his recommendations in their entirety.

An appropriate Order follows.

### ORDER

**AND NOW,** this 12th day of September, 2012, upon consideration of Petitioner, Joseph White's ("White") Petition for Writ of Habeas Corpus ("Petition"), the memorandum in support thereof, the Response and Supplemental Response of the District Attorney's Office of Philadelphia, and after review of the Report and Recommendation ("R & R") of Magistrate Judge Thomas J. Rueter (Doc. No. 40), it is hereby **ORDERED** that:

1. the R & R is **APPROVED** and **ADOPTED;**
2. Petitioner's Petition is **GRANTED;** and
3. the Superintendent of the State Correctional Institution at Forest, in Camp Hill, Pennsylvania, shall release Petitioner from custody should Petitioner not be re-sentenced by the state court within ninety (90) days of the date of this Order.

### ORDER

AND NOW, this day of _____, 2012, upon consideration of the pleadings and record herein, and after review of the Report and Recommendation of Magistrate Judge Thomas J. Rueter, it is hereby

### ORDERED

that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED;**
2. Petitioner's petition for a writ of habeas corpus is **GRANTED;** and
3. The Superintendent of the State Correctional Institution at Forest, in Camp Hill, Pennsylvania, shall release petitioner from should petitioner not be re-sentenced by the state

court within ninety (9) days of the date of this Order.

### REPORT AND RECOMMENDATION

THOMAS J. RUETER, United States Magistrate Judge.

Presently before the court is a counseled Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the State Correctional Institution Forest, in Camp Hill, Pennsylvania. For the reasons that follow, the court recommends that the petition be granted.

### I. BACKGROUND AND PROCEDURAL HISTORY

On November 13, 2008, a jury sitting in the Court of Common Pleas of Philadelphia County found petitioner guilty of homicide by vehicle while driving under the influence and driving under the influence of alcohol or a controlled substance. (N.T. 11/13/08 at 84–85.) At that time, the court deferred sentencing pending a presentence investigation and on January 9, 2009, now-retired Judge Renee Cardwell Hughes sentenced petitioner to an aggregate sentence of five to ten years imprisonment. (Resp. Ex. C, at 1.)

The evidence presented at trial was as follows:

On October 7, 2006, Benjamin Lipsky (16 years old) (hereinafter "Benjie") was attending religious services with his family at Beth Midrash Harav Synagogue, located at 7926 Algon Avenue, in the City and County of Philadelphia. At the conclusion of the service, Benjie's father and two brothers, Daniel and Elie, began to walk back to their home, while Benjie stayed behind with some of the congregants. Benjie left Synagogue to catch up to his family who had stopped in the median of Algon Avenue

to allow cars to pass before crossing. Algon Avenue was illuminated brightly by street lights and the weather was clear and dry that evening. Benjie stepped into the parking lane of Algon Avenue and was instantly struck by [petitioner's] white Cadillac which had swerved into the parking lane. The impact threw Benjie over the car, where he struck the hood, and landed approximately 40 feet from the point of impact. [Petitioner] did not attempt to slow down, but continued driving down the street. [Petitioner's] vehicle eventually stopped approximately 20 feet south of where Benjie's body was found. [Petitioner] exited his vehicle and asked, "did something just happen?"

Police officers noted that [petitioner] smelled like alcohol from three feet away, swayed back and forth, and his speech was slurred. [Petitioner] could not produce his driver's license when asked. He was placed in custody for driving under the influence of alcohol, and then fell asleep in the back of the police car on the way to the Police Detention Unit ("PDU"). At the PDU, [petitioner] consented to chemical testing and confessed that he hit a man. The blood test revealed [petitioner's] blood alcohol level was .163%, twice the legal limit.

Upon arrival at the hospital, Benjie was pronounced brain dead. He sustained breaks in both bones in his left leg, a severe skull fracture which caused catastrophic brain injury, and a fracture of his third vertebra. Benjie was pronounced dead the following day.

[Petitioner's] car sustained damage to the passenger side at the headlight area and the grill and the passenger side windshield was also broken. Similarly, both the passenger side headlight and turn signal were dislodged. There were no evasive maneuver marks (tire marks) left from [petitioner's] car which would show quick movements made to avoid hitting Benjie. However, a fresh scuff mark from Benjie's shoe was found 9 inches before the end of the parking lane.

*Commonwealth v. White,* 996 A.2d 559 (Pa.Super.Ct.2010) (Table). (Resp. Ex. C, at 1–3.)

Prior to trial, the prosecutor offered petitioner a plea bargain of two and one-half to five years incarceration in exchange for a guilty plea. (N.T. 11/5/08 at 22.) This sentence was below the minimum mandatory of three to six years. Petitioner rejected this offer and insisted on a jury trial. Prior to jury selection, the court expressed its dismay regarding petitioner's decision to not plead guilty. The following discussion occurred between Judge Hughes and defense counsel prior to jury selection:

THE COURT: ... I'm still trying to process why he doesn't want to plead.
DEFENSE COUNSEL: Judge, he says he's not guilty. He says it was an accident. He says the kid ran out in front of his car. Swears it to his final grave. I don't know what to tell you. He was definitely intoxicated. I'm not going to contest it.
THE COURT: Does he understand that his being intoxicated eviscerates any kind of justification, and the kid running into the street is not a justification? Does he understand that in the Commonwealth when you hit a civilian, you're always wrong?
DEFENSE COUNSEL: Not always, Judge. There still has to be causation.
THE COURT: Excuse me? Baby, this is criminal.
DEFENSE COUNSEL: I understand. The Commonwealth still has to prove causation beyond a reasonable doubt.
THE COURT: Commonwealth has to prove causation. What would be the problem with proving causation?

DEFENSE COUNSEL: Judge, he doesn't want to plead. I'm sorry. I spoke to him.

THE COURT: Now, that's a better statement for you to say to me than to tell me that the Commonwealth can't make causation when a two ton car hit a 16 year old. So we're not going to talk causation, because I got a drunk driver behind the wheel—

DEFENSE COUNSEL: I understand.

THE COURT:—who hits a 16 year old. I don't think the Commonwealth's going to have any problem proving causation. So if he doesn't want to plead, so be it. He'll take his lumps.

DEFENSE COUNSEL: Judge, his health is poor.

THE COURT: I really don't care that his health is poor. I've got lots of defendants with poor health. Why does that make this one special?

DEFENSE COUNSEL: He's not going to plead.

*Id.* at 3–5. The court then discussed the plea offer directly with petitioner and stated:

THE COURT: ... I need to be straight with you, Mr. White. I don't think you are making a good decision. [Your attorney] sees it differently than I do. That's why people go to juries. You may be able to convince the jury of your position. I don't see your position holding today. And while I fully appreciate the extraordinary hardship that it would be for your wife, I look only at what the law says, and I just don't see you making a very good decision right now.

So what we're going to do is pick the jury. I will ask you a final time on Monday before I swear the jury in if you wish to reject the Commonwealth's of-

fer. So I am leaving it on the table. I am asking you to think long and hard because the Commonwealth will not only charge you with vehicular homicide, they will charge you with other things. Three to six is a mandatory minimum on one charge. It is not your total exposure in this case.

THE DEFENDANT: Right.

THE COURT: You have a criminal history which, while it will not be presented to the jury, is highly relevant to me, and it is something that I have been apprised of, or would be apprised of if we should go to sentencing. I want you to think long and hard ... about your decision. I don't think this is a good position to be in and as long as two and a half years seems—it could be a lot longer if the jury finds you guilty of multiple crimes. So you think about it.

*Id.* at 24–25.[1]

Later, during the trial, the court continued to express its displeasure with petitioner for not pleading guilty. After counsel presented closing arguments and the jury was dismissed for the day, the court discussed the verdict sheet with the Assistant District Attorney and petitioner's trial counsel. (N.T. 11/12/08 at 218–30.) During the course of a discussion regarding the questions to be posed to the jury, Judge Hughes commented, "[f]rankly, I vehemently dislike DUIs and when somebody stands in front of me and concedes that their blood alcohol was a. 16, I think they ought to plead, period, but that's just my little humble opinion." *Id.* at 228. In addition, after the jury returned the guilty verdict, trial counsel argued that petitioner's bail should not be revoked pending sentencing. (N.T. 11/13/08 at 88–95.) The court determined that bail should be revoked and stated:

---

1. This court only has a small portion of the transcript from the proceedings on November 5, 2008, *i.e.,* pages 1–5 and 22–25. The remaining pages were not part of the state court record.

I am not insensitive, but at the same time I don't see Mr. White being any different than any of my other defendants. He does now become a flight risk. For the very reasons he refused to plead when the Commonwealth made him I think an exceedingly generous offer and when I offered to make special arrangements for him so that the time he serve[d] would be in a place that was most appropriate for his circumstances, none of that was important to him, none of that mattered, so we are in a dramatically different situation.

*Id.* at 93.[2]

At the sentencing hearing, the court pointed out that petitioner faced a mandatory minimum sentence of three to six years imprisonment. (N.T. 1/9/09 at 2.) The court also indicated that with respect to his criminal history, petitioner had a "zero prior record score" despite the fact that he had been convicted of a DUI approximately eighteen months before the accident in the present case, because the prior DUI conviction resulted in ARD. *Id.* at 2, 14–15, 19. After hearing statements from the victim's family, the Commonwealth requested that the court impose the maximum sentence of five to ten years imprisonment, while trial counsel argued for the imposition of the mandatory minimum sentence. *Id.* at 4–23. The court then addressed petitioner and commented on petitioner's refusal to plead. *Id.* at 24. The court stated that "I thought about this a lot because I begged you to take the Commonwealth's offer which was less than the mandatory minimum." *Id.* The court

indicated that it believed petitioner to be remorseful, but that petitioner had not accepted responsibility for the accident. *Id.* at 25. The court then stated, "[y]ou put this family through this extremely extraordinarily unnecessary trial." *Id.* The court again commented on petitioner's decision to go to trial, stating, "I would have expected a man of your stature[3] not to make a family go through that incredibly painful trial for a case that was not winnable when the Commonwealth made you what I deemed to be a cake offer. It was a cake offer." *Id.* at 26. After explaining why the legislature had created a mandatory minimum, the court again commented on petitioner's choice to go to trial. The court stated, "[a]nd you had the opportunity to get less [than the minimum]. It's not appropriate to give you a three to six minimum. It's really not." *Id.* at 26–27. The court then imposed the maximum sentence of five to ten years imprisonment. *Id.* at 27.

Petitioner subsequently filed a motion to arrest judgment and for a new trial, arguing, *inter alia,* that the court abused its discretion in sentencing, demonstrating bias and partiality. (Mot. for Arrest of J./New Trial ¶ 5–6.) In the motion, petitioner argued that the court seemed "especially interested in having this Defendant plead to the offer of two and one-half (2–1/2) to five (5) years" imprisonment. Petitioner further averred that, when petitioner "insisted on trial, as is his right, the Court seems to have over-reacted" and imposed a sentence not supported by the facts of the case. The court denied the motions on January 22, 2009.

---

**2.** At the time of the sentencing hearing, petitioner was sixty-nine years old and in poor health. (N.T. 1/9/09 at 14, 21.) Judge Hughes was apparently referring to these factors when she offered to have petitioner confined in an institution that would accommodate these conditions if petitioner had accepted the plea bargain.

**3.** At the time of sentencing, petitioner was sixty-nine years old and had been married for thirty-nine years. (Pretrial Service Investigation Report, Jan. 23, 2007). He served in the military for six years and received an honorable discharge. (N.T. 1/9/09 at 22.) He also was a member of the Fraternal Order of Police.

Petitioner then filed a notice of appeal to the Pennsylvania Superior Court. The Superior Court summarized the claims presented as follows: (1) is appellant entitled to an arrest of judgment on all charges where the verdict was not supported by sufficient evidence and where the Commonwealth did not prove its case beyond a reasonable doubt; (2) is appellant entitled to a new trial, as the verdict is against the weight of the evidence; (3) is appellant entitled to a remand to the Sentencing Court for a new Sentencing Hearing, where the Court abused its discretion in imposing sentence and where the sentence imposed was excessive and harsh under the circumstances and where the Court had expressed its bias against the type of case before it and where the Court failed to consider mitigating factors before it; (4) is appellant entitled to a new trial as the result of Court error where the Court improperly failed to permit cross-examination of an expert on his lack of expertise in accident reconstruction; and (5) should appellant be awarded a new trial where the Court erred and where it failed to advise counsel of the nature of the jury charge prior to giving it. (Resp. Ex. C, at 3–4.) In a memorandum opinion dated March 31, 2010, the Pennsylvania Superior Court affirmed the judgment of sentence, with one judge concurring. *See* Resp. Ex. C. Subsequently, the Supreme Court of Pennsylvania denied petitioner's request for discretionary review on August 4, 2010. *Commonwealth v. White,* 607 Pa. 691, 3 A.3d 671 (Pa.2010) (Table). Petitioner did not file a petition pursuant to the Post-Conviction Relief Act, 42 Pa. Cons.Stat. Ann. § 9541, *et seq.*

On April 4, 2011, petitioner filed a *pro se* petition for habeas corpus relief. Petitioner raised one issue—that his sentence was excessive. (Pet. ¶ 12.) Petitioner asserted that he "was offered a 'cake' sentence to accept a plea agreement. His attorney advised the petitioner to take the case to trial. The Commonwealth's response, because the petitioner executed his constitution[al] right of Due Process, was to give the petitioner an excessive sentence." [4] *Id.* The Commonwealth filed a Response on February 16, 2012, arguing that petitioner is not entitled to relief on his claim. (Doc. 19.) The court subsequently appointed counsel to represent petitioner; counsel filed a memorandum of law in support of the habeas petition on April 13, 2012. (Docs. 20–22, 32.) On July 16, 2012, the Commonwealth filed a Supplemental Response. (Doc. 39.)

## II. *DISCUSSION*

### A. *Habeas Corpus Standards*

### 1. *Exhaustion and Procedural Default*

It is well established that a prisoner must present all of his claims to a state's intermediate court, as well as to its supreme court, before a district court may entertain a federal petition for habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 847, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Rolan v. Coleman,* 680 F.3d 311, 317 (3d Cir.2012).[5]

---

4. In the memorandum accompanying his *pro se* habeas petition, petitioner essentially argues that the court punished petitioner for exercising his right to go to trial by imposing a harsher sentence than it would have imposed if petitioner had accepted the plea bargain. Petitioner reasons that he proceeded to trial because he was advised by his counsel of the likelihood of being named in a civil lawsuit by the victim's family and if he did not defend himself in the criminal trial, he would have exposed himself to greater financial liability in the civil suit. (Pet. Ex. A, at 5, 7.)

5. On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 that declares that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement. The Third Circuit has recognized the validity of this Order.

"The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights." *Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir.1992).

■■■ However, when the petitioner cannot obtain state court review of his claims because of noncompliance with state procedural rules, the doctrine of procedural default generally bars federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 729–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Sistrunk v. Vaughn*, 96 F.3d 666, 674–75 (3d Cir.1996). The Supreme Court stated:

> [I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred ... there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546. Upon a finding of procedural default, review of a federal habeas petition is barred unless the habeas petitioner can show: "(1) the procedural rule was not independent and adequate; (2) cause for his failure to comply with state procedural rules and prejudice resulting therefore; or (3) that a fundamental miscarriage of justice will occur if not considered." *Peterkin v. Horn*, 176 F.Supp.2d 342, 353 (E.D.Pa. 2001). The adequacy requirement requires a court to determine whether the state rule in question was "firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 130 S.Ct. 612, 617–

See *Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir.2004), *cert. denied*, 544 U.S. 1063,

18, 175 L.Ed.2d 417 (2009) (internal citations and quotations omitted).

■■■ Petitioner can demonstrate cause for procedural default if he can show that some objective factor external to the defense impeded or prevented his ability to comply with the state procedural rules. *Caswell*, 953 F.2d at 862. The cause must be "something that cannot fairly be attributed to [the petitioner.]" *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546. To show prejudice, petitioner must present evidence that this factor did more than merely create a possibility of prejudice; it must have "worked to [petitioner's] *actual* and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Additionally, the fundamental miscarriage of justice exception to procedural default is concerned only with "actual" innocence and petitioner must show that in light of new evidence it is more likely than not that no reasonable juror would have convicted him absent the claimed error. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

### 2. *AEDPA*

The Commonwealth contends that petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The provisions of the AEDPA relevant to the instant matter provide as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

125 S.Ct. 2516, 161 L.Ed.2d 1114 (2005).

merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

■ The Supreme Court has instructed that the "contrary to" and "unreasonable application" clauses in Section 2254(d)(1) should be viewed independently. With respect to Section 2254(d)(1), a federal habeas petitioner is entitled to relief under the "contrary to" clause only if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Court in *Williams* was careful to note that most cases will not fit into this category, which is limited to direct and unequivocal contradiction of Supreme Court authority. *Id.* at 406–08, 120 S.Ct. 1495. *See also Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir.1999) (*en banc*) (to prove entitlement to relief under "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; ... petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome") (emphasis in original).

■ Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

*Williams*, 529 U.S. at 411, 120 S.Ct. 1495. Relief is appropriate only where the state court decision is also objectively unreasonable. *Id.* The Supreme Court recently explained that where "it is the state court's application of governing federal law that is challenged, the decision 'must be shown to be not only erroneous, but objectively unreasonable.'" *Waddington v. Sarausad*, 555 U.S. 179, 190, 129 S.Ct. 823, 172 L.Ed.2d 532 (2009) (quoting *Middleton v. McNeil*, 541 U.S. 433, 436, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004)). *See also Appel v. Horn*, 250 F.3d 203, 209 (3d Cir.2001) ("A state court decision will be an 'unreasonable application' if (1) 'the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular ... case;' or (2) 'the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'") (quoting *Williams*, 529 U.S. at 407, 120 S.Ct. 1495).

With respect to 28 U.S.C. § 2254(d)(2), which dictates that federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented, the petitioner must demonstrate that a reasonable fact-finder could not have reached the same conclusions given the evidence. If a reasonable basis existed for the factual findings reached in the state courts, then habeas relief is not warranted. *Campbell v. Vaughn*, 209 F.3d 280, 290–91 (3d Cir. 2000). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Appel*, 250 F.3d at 209 (The AEDPA increases the deference federal courts must give to the factual

findings and legal determinations of the state courts.) (citing 28 U.S.C. § 2254(e)(1)) (quotation omitted).

### 3. *Scope of Review*

In its original Response, respondent did *not* argue that petitioner's claim is procedurally defaulted because petitioner did not exhaust his state court remedies. Rather, respondent first raises this argument, strenuously, in the Supplemental Response which was filed after petitioner submitted a counseled Memorandum of Law in support of his habeas petition. In the Supplemental Response, respondent argues at great length that petitioner did not present to the Superior Court the claim that the trial court violated petitioner's due process rights in imposing the mandatory sentence because petitioner exercised his right to trial. *See* Supp. Resp. at 7–21. According to respondent, petitioner did not raise a federal due process claim in the Superior Court appeal, but rather raised a state law issue, that the trial court demonstrated partiality and bias in sentencing. (Supp. Resp. 7–9, 14–17.)

▋ Meanwhile, petitioner argues that the court should conduct a *de novo* review, rather than reviewing the state court decision pursuant to the more deferential AEDPA standard, because the Pennsylvania Superior Court did not address the judicial vindictiveness argument. (Pet'r's Mem. of Law at 14–19.) Petitioner contends that the Superior Court did not adjudicate his assertion of judicial vindictiveness that he raised with that court. "[I]f an examination of the opinions of the state courts shows that they misunderstood the nature of a properly exhausted claim and thus failed to adjudicate that claim on the merits, the deferential standards of review in AEDPA do not apply" and review by the district court is *de novo*. *Thomas v. Horn,* 570 F.3d 105, 124 (3d Cir.2009). *See Cone v. Bell,* 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.'"). *See also Bond v. Beard,* 539 F.3d 256, 263 (3d Cir.2008) ("We review *de novo* issues that the state court did not decide on the merits."); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001) (finding that if the state court has not reached the merits of a claim that was properly preserved by a defendant, and the claim is thereafter presented to a federal habeas court, the deferential standards provided by AEDPA do not apply).

The issues of whether petitioner exhausted his claim and whether the court will review petitioner's claim under the standards of AEDPA or *de novo* require this court to look to petitioner's Superior Court brief and the Superior Court opinion. In his Superior Court brief, petitioner sought to appeal, *inter alia,* the discretionary aspects of his sentence and argued that his sentence was unreasonable because the court was biased against DUI defendants and that the court indicated that petitioner should have pled guilty. (Resp. Ex. B, at 27.) In support of his argument, petitioner averred that the court "desperately wanted [petitioner] to plead guilty," "even went so far as to enter into the plea bargaining process," and "actually attempted to talk [petitioner] into the plea." *Id.* at 27–28. In arguing that the sentence was unreasonable, petitioner stated "the sentence imposed was meant to punish the Defendant for electing to go to trial instead of offering a guilty plea." *Id.* at 28. Citing comments made by the court, petitioner further argued that "[w]here a defendant exercises a constitutional right, such as the right to go to trial, and is then punished for same, this Honorable Court should deem that to be an

impermissible sentencing factor." *Id.* Petitioner contended that "[t]he Sentencing Court was upset with [petitioner] for not following her advice and for refusing to plead guilty." *Id.* Petitioner averred that "[t]he Court engaged in judicial vindictiveness which implicates the discretionary aspect of sentencing. *See Commonwealth v. Robinson,* 931 A.2d 15 (Pa.Super.2007)." *Id.*[6]

Petitioner also sought a new sentencing hearing, contending that the court abused its discretion when it sentenced petitioner to an excessive sentence because the court was biased and prejudiced. *Id.* at 30–38. Petitioner reiterated his argument that the court was prejudiced against DUI defendants and believed that such defendants should plead guilty. *Id.* at 31–32. Petitioner claimed that the court "simply had no appreciation for [petitioner's] right to choose a trial" and that the court's prejudice infected the sentencing process. *Id.* at 32, 32–37.

In its opinion, the Pennsylvania Superior Court characterized petitioner's claim as follows: "[w]e now turn to [petitioner's] claim that he is entitled to a new sentencing hearing because his sentence was unreasonable and excessive given the trial court's purported bias against both [petitioner] and DUI cases in particular." (Resp. Ex. C, at 11.) The court first found that petitioner waived this issue on appeal because he did not indicate where in the record he raised any objection to the court's comments that it "disliked" DUI cases and that it may have been in petitioner's best interest to accept the Commonwealth's plea offer. *Id.* The court noted that every unwise or irrelevant remark

made by a judge does not compel a new trial, but that the focus should be what effect, if any, such comments had on the jury. *Id.* at 12. The court concluded that the comments in question were made out of the presence of the jury and thus had no effect on the disposition of the case. *Id.* The court then analyzed petitioner's contention that his sentence was improper because the trial court failed to take into account certain mitigating circumstances. The court stated that petitioner's challenge was to the discretionary aspects of a sentence and petitioner's appeal was to be considered a petition for allowance of appeal. *Id.* at 13. Applying the four-part test applicable to such challenges, the court ultimately found that petitioner's claim that the trial court failed to consider certain mitigating factors did not present a substantial question concerning the propriety of his sentence. *Id.* at 13–15. The Superior Court thus concluded that petitioner's challenge to his sentence must fail. *Id.* at 15.

 Based on the foregoing, it is clear that petitioner fairly presented his federal Constitutional claim of judicial vindictiveness to the Pennsylvania Superior Court. *See* Resp. Ex. B, at 25–38. The doctrine of exhaustion requires a habeas petitioner to demonstrate that a federal claim has been fairly presented to the state courts. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). "Fair presentation" requires that a petitioner present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. *Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir.2001).

---

**6.** In *Commonwealth v. Robinson,* 931 A.2d 15 (Pa.Super.Ct.2007), the defendant raised a claim of judicial vindictiveness. The Pennsylvania Superior Court analyzed that claim under the holdings of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656

(1969) and *Commonwealth v. Speight,* 578 Pa. 520, 854 A.2d 450 (Pa.2004). The United States Supreme Court opinion *North Carolina v. Pearce* and its progeny set forth the standards for analyzing a judicial vindictiveness claim and are discussed *infra.*

Mere similarity of claims is insufficient to prove exhaustion. *Duncan v. Henry*, 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). A petitioner can "fairly present" his claim through: (1) reliance on pertinent federal cases, (2) reliance on state cases employing constitutional analysis in like fact situations, (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Nara v. Frank*, 488 F.3d 187, 197–98 (3d Cir.2007) (citing *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999)).

■■■ In his Superior Court brief, petitioner set forth the trial court's comments that formed the basis of his judicial vindictiveness argument and averred that the court imposed the mandatory sentence because he exercised his right to go to trial. *See* Resp. Ex. B, at 28. Petitioner claimed that the trial court engaged in judicial vindictiveness, which implicates the discretionary aspect of sentencing, citing to *Commonwealth v. Robinson*, 931 A.2d 15 (Pa.Super.Ct.2007). *See id.* While *Robinson* is a state court case, it addresses a judicial vindictiveness claim under the holdings of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Commonwealth v. Speight*, 578 Pa. 520, 854 A.2d 450 (Pa.2004). Petitioner put the Superior Court on notice that he was asserting a federal claim through his reliance on *Robinson*. Thus, petitioner's claim of judicial vindictiveness is exhausted and not procedurally defaulted.

■■■ Nevertheless, although petitioner presented his judicial vindictiveness claim to the Pennsylvania Superior Court, the court did not address it on the merits.

While petitioner raised the constitutionality issue, the Superior Court did not analyze petitioner's due process claim. Again, petitioner raised the judicial vindictiveness issue, citing to *Robinson* (which discusses United States Supreme Court precedent). However, the Superior Court's decision did not address petitioner's contention that the sentencing judge acted vindictively and punished petitioner for proceeding to trial rather than pleading guilty. The Superior Court failed to adjudicate the relevant claim on the merits; therefore, the deferential standards of review in the AEDPA do not apply. *See Thomas*, 570 F.3d at 124. As such, this court must conduct a *de novo* review of petitioner's claim.

### B. *Petitioner's Claim*

Petitioner essentially presents one claim—that the trial court punished petitioner for exercising his constitutionally protected right to trial by acting vindictively and imposing an excessive sentence. Petitioner avers that this was evidenced by comments made by the trial court during sentencing. Specifically, petitioner argues that the sentencing court violated his due process rights under the Fifth Amendment to the United States Constitution and his right to trial under the Sixth Amendment. The Due Process Clause of the Fifth Amendment, as incorporated and made applicable to the states through the Fourteenth Amendment, provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. Moreover, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...." U.S. Const. amend. VI.[7]

---

7. It is well established that the Sixth Amendment, like the common law, reserves the jury trial right for prosecutions of serious offenses, and that "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." *Lewis v.*

The United States Supreme Court has stated:

To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 [ (1978) ]. In a series of cases beginning with *North Carolina v. Pearce* and culminating in *Bordenkircher v. Hayes*, the Court has recognized this basic—and itself uncontroversial—principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

*United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)).

In *North Carolina v. Pearce*, the Supreme Court analyzed whether the imposition of a harsher sentence after a retrial was the result of judicial vindictiveness. 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The Court held that if a court imposes a more severe sentence upon a defendant after a new trial, the reasons for doing so must be based upon objective information concerning identifiable conduct on the part of the defendant that occurs after the original sentencing, and the facts upon which the increased sentence is based must be made part of the record so that the constitutionality of the increased sentence can be reviewed on appeal. *Id.* The Court applied a presumption of vindictiveness, "which may be overcome only by objective information in the record justifying the increased sentence." *Goodwin*, 457 U.S. at 374, 102 S.Ct. 2485. The Supreme Court has since limited the application of the presumption to circum-

stances in which there is a "reasonable likelihood" that the increase in sentence is the product of actual vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness. *Id.* at 799–800, 109 S.Ct. 2201. This court will not apply the presumption to the case at bar, but instead will determine whether petitioner has proven actual vindictiveness on the part of the trial court.

■ Thus, when analyzing a vindictiveness claim under *North Carolina v. Pearce* and its progeny, it is the context of the sentencing court's comments which determines whether a constitutional error has occurred. "The key issue is the court's motive." *United States v. Williams*, 216 Fed.Appx. 201, 203 (3d Cir.2007) (not precedential) (citing *United States v. Esposito*, 968 F.2d 300, 303 (3d Cir.1992)). According to petitioner, the record demonstrates that the trial court was willing to sentence him to two and one-half to five years imprisonment prior to the trial, but imposed the maximum sentence after trial. Specifically, petitioner takes issue with the court's comments at sentencing regarding his decision to proceed to trial rather than plead guilty and the court's ultimate decision to impose the maximum sentence of five to ten years imprisonment. At the sentencing hearing, after the victim's family and defense counsel presented their remarks, the court stated:

THE COURT: Mr. White, I have thought about this a lot. And you have even acknowledged in your letter to me that I thought about this a lot because I begged you to take the Commonwealth's offer which was less than the mandatory minimum.

THE DEFENDANT: You did.

*United States*, 518 U.S. 322, 325, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996) (quoting *Dun-*

*can v. Louisiana*, 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)).

THE COURT: There was no beating this case. And I fully appreciate that ARD is not relevant for calculation of prior record score. I fully appreciate that. What is relevant, however, is whether a person is truly remorseful. And I believe that you and your wife are truly remorseful about Benjamin Lipsky's death. What I don't believe is that you were ever prepared to accept responsibility. You put this family through this extremely extraordinarily unnecessary trial. You did not take responsibility for your conduct.

The fact that your ARD is not an aggravator should be relevant, however, to you. You knew that less than a year prior to this child's death you had been exceedingly drunk on the streets of Philadelphia and rear-ended a car and only for the grace of God was a citizen or yourself not hurt. You got ARD. That's what good lawyers do for you. They give people a second chance.

In fact, the system is designed to give a second chance. I'm a huge advocate of a second chance. You got the second chance. You got a pristine clean record and an opportunity to go forward with your life. And you chose, after that incident, to drink again and to drive again. And when confronted with the reality of what you did, you did not, as I would have expected a man of your stature, because I did read everything that was sent to me, I listened to everything your lawyer said about you, I would have expected a man of your stature not to make a family go through that incredibly painful trial for a case that was not winnable when the Commonwealth made you what I deemed to be a cake offer. It was a cake offer. And you rejected it, knowing that you could go to a special facility for the elderly, knowing that we would make special arrangements for your medical treatment. You threw all of that back and you rolled the dice.

So I hear everything [trial counsel] has to say, but I don't hear the responsibility. I don't hear the remorse. I don't hear what is necessary for me to accept that three to six is appropriate and three to six is the mandatory minimum sentence that is permitted by law. The legislature took this action, after that case, the legislature took this action because another citizen, a storied war hero, was run down on a street by another leading citizen because he felt he shouldn't be punished because he was a leading citizen. That's why they made the three to six minimum. But it was a minimum. It was a minimum. And you had that opportunity to get less. It's not appropriate to give you a three to six minimum. It's really not. So the five to ten, the five to ten maximum sentence is imposed.

(N.T. 1/9/09 at 24–27.)

In *United States v. Moskovits*,[8] the petitioner argued that the sentencing court

---

8. Petitioner's counseled brief relies heavily upon *United States v. Moskovits*, 86 F.3d 1303 (3d Cir.1996). In the Supplemental Response, the Commonwealth does not address *Moskovits*, presumably because it contends that the court should conduct its analysis pursuant to the standards of the AEDPA. *See* Supp. Resp. at 22 ("[T]he relevant precedent for this Court to consider consists of the holdings of the United States Supreme Court. Petitioner suggests that cases from the Third Circuit is [sic] relevant precedent when it is discussing United States Supreme Court cases. That is not correct.") (citing to *Parker v. Matthews*, —— U.S. ——, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012)). However, *Parker* is distinguishable from the case at bar. In *Parker*, the Court found that the Sixth Circuit improperly relied upon its own precedent as the basis for justifying habeas relief under AEDPA. *Id.* at 2155. The Court found that "the Sixth Circuit's reliance on its own precedents [could not] be defended ... on the ground that they merely reflect what has been 'clearly established' by [Supreme Court] cases." *Id.* The Court further stated that the

improperly considered as a sentencing factor the petitioner's decision to exercise his constitutional right to trial by jury rather than accept the government's plea offer. 86 F.3d 1303, 1310 (3d Cir.1996). In imposing a twenty-year sentence, the sentencing court explained, "[t]o me, [Moskovits's] refusal to accept the plea is further evidence of his lack of remorse and failure to take responsibility for his crimes." *Id.* In doing so, the Third Circuit found that the sentencing court erred. In support of this finding, the Third Circuit relied upon, *inter alia*, United States Supreme Court precedent which protected a defendant's right to go to trial pursuant to the Sixth Amendment.[9] Furthermore, the Court of Appeals was unpersuaded by the argument that the sentencing court's comment merely expressed the view that the petitioner had been unwise to reject the plea offer, or that the sentencing court was merely withholding leniency. *Id.* at 1310–11. The Third Circuit deemed the government's arguments implausible "in light of the fact that … [the sentencing judge] made his comment in the context of setting out his reasons for the harsher sentence he was imposing." *Id.* at 1311.

■ In a similar ruling, the Third Circuit upheld a finding that the sentencing court impermissibly punished a defendant for proceeding to trial, thereby denying him his Fifth Amendment right to due process of law. In *Government of the Virgin Islands v. Walker*, 261 F.3d 370, 374–76 (3d Cir.2001), the Third Circuit found that the Appellate Division of the Virgin Islands properly vacated the defendant's sentence because the trial judge punished Walker for exercising his constitutional right to proceed to trial. The court first noted that the trial judge improperly intruded into the plea negotiations. *Id.* at 374.[10] After Walker's co-

"[t]he highly generalized standard for evaluating claims of prosecutorial misconduct set forth in … [Supreme Court precedent] bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit" in *Parker. Id.* Furthermore, the Court found error with the fact that one of the prior opinions relied upon by the Sixth Circuit was decided under pre-AEDPA law, "so that case did not even purport to reflect clearly established law as set out in [the Supreme] Court's holdings." *Id.* In contrast to *Parker*, the Third Circuit cases discussed *supra* and *infra* reflect what has been clearly established by Supreme Court precedent, *e.g., North Carolina v. Pearce, United States v. Goodwin* and *Alabama v. Smith*. Moreover, as discussed *supra*, the court is reviewing petitioner's claim *de novo*, not under the deferential standards of the AEDPA.

9. Specifically, the Third Circuit relied upon, without discussing, *United States v. Jackson*, 390 U.S. 570, 581–82, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (invalidating death sentence under Federal Kidnapping Act because it could be imposed only upon a defendant who elected a jury trial, whereas the maximum penalty that could be imposed on a defendant waiving this right was life imprisonment) and *Corbitt v. New Jersey*, 439 U.S. 212, 223, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) (upholding statute that allows judge to exercise leniency by choosing a lesser sentence for murder defendants who pleaded *non vult*). The Third Circuit also cited to *United States v. Paramo*, in which the Third Circuit held that the defendant's due process rights were violated when the prosecutor refrained from filing a motion necessary for a downward departure because the defendant elected to go to trial. 998 F.2d 1212, 1219 (3d Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994).

10. As in the *Walker* case, the trial judge in petitioner's case participated in the plea bargain process, even though that is prohibited by Pennsylvania law. Under state law, "a trial judge is forbidden from participating in any respect in the plea bargaining process prior to the offering of a guilty plea." *Commonwealth v. Johnson*, 875 A.2d 328, 331–32 (Pa.Super.Ct.2005) (citing *Commonwealth v. Evans*, 434 Pa. 52, 252 A.2d 689 (Pa.1969)). *See also* Fed.R.Crim.P. 11(c)(1) (similar restriction imposed on federal judges). Prior to sentencing, Judge Hughes expressed her opinion that petitioner should plead guilty. As noted *supra*, prior to jury selection, Judge Hughes advised petitioner to "think long and

defendant pled guilty and Walker exercised his right to a jury trial, the sentencing court stated that Walker "had been offered a 'sweety deedie plea,' but failed to accept it." *Id.* at 375 (internal citation omitted). The Third Circuit concluded that:

> the sentencing court sentenced Walker to the maximum of two consecutive ten-year terms, followed by three concurrent three-year terms and a fine of $13,000, primarily because Walker exercised his constitutional right to a jury trial. As the Appellate Division stated: The harsh sentence imposed on Walker violated his due process right to a fair sentencing procedure, because the sentence constituted punishment for his assertion of his right to a trial.

*Id.* (internal citation omitted). A sentencing court can reject the results of a plea negotiation if it concludes that the resulting agreement is not in the best interests of justice. *Id.* The court concluded, however, that in *Walker,* the sentencing court's actions "exceeded all conceivable limitations of propriety." *Id.* The sentencing court's "involvement merged into the 'prosecutorial function properly left to the executive branch.'" *Id.* at 376. The Third Circuit further explained:

> "Even the appearance of siding with the government to dissuade a defendant from asserting his constitutional right to a trial is prohibited." [*Walker v. Gov-*

*ernment of the Virgin Islands,* 124 F.Supp.2d 933, 938 (D.Vi.2000)] (citing *United States v. Stockwell,* 472 F.2d 1186, 1187–88 (9th Cir.1973) ("[C]ourts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice.")). In *Longval v. Meachum,* 651 F.2d 818 (1st Cir.1981), the Court of Appeals for the First Circuit stated: "[a] judge who participates in plea bargaining 'is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant.'" *Id.* at 821.

*Id.* Ultimately, the Third Circuit upheld the Appellate Division's finding that the disparity of sentences imposed on the co-defendants, the harshness of Walker's sentence for a first-time, nonviolent offense, and the judge's implicit threats and coercive involvement in plea negotiations raised the inference that the sentencing judge gave undue consideration to Walker's refusal to plead guilty and that Walker's insistence on a jury trial impermissibly influenced the sentencing judge's imposition of the maximum sentence. *Id.* The court further agreed with the Appellate Division's conclusion that "[s]uch abuse of discretion, regardless of what other, legitimate factors the judge may have considered in sentencing Walker, was constitutional error." *Id.*

---

hard" about the plea offer. (N.T. 11/5/08 at 24–25.) She further told petitioner that he was making a mistake in not accepting the plea offer. *Id.* She also asked the prosecutor to leave the plea offer open for a few more days so that petitioner could reconsider his position. *Id.* at 23. The court also suggested to petitioner that his sentence would be greater than the plea offer. The court stated, "[y]ou have a criminal history which while it will not be presented to the jury, is highly relevant to me, and it is something that I have been apprised of or would be apprised of if we go to sentencing." *Id.* at 24–25. The

court even offered to place petitioner in a more desirable prison if he pled guilty. (N.T. 11/13/08 at 93.) At least one federal appellate court has held that a reviewing court should be extra vigilant in reviewing a claim of vindictiveness in sentencing when the court was involved in the plea negotiating process. *See United States v. Morris,* 827 F.2d 1348, 1352 (9th Cir.1987) ("[W]here the court has taken a hand in or was 'involved in' plea sentencing, we require the record affirmatively show that 'no improper weight was given the failure to plead guilty.'") (citing *United States v. Carter,* 804 F.2d 508, 514 (9th Cir.1986)).

In a non-precedential opinion, the Third Circuit remanded a case to a different sentencing judge, because the sentencing judge's comments created the appearance of partiality. *Government of the Virgin Islands v. Marsham*, 62 Fed.Appx. 432 (3d Cir.2003) (not precedential). Under the facts of that case, the defendant offered to plead guilty after the trial had commenced. Upon hearing of the offer, the court commented that the defendant had rejected a "decent" plea agreement, that the government had already performed a "tremendous amount of work," and that "[m]aybe now ... people will take the Government seriously." *Id.* at 435. The Court of Appeals found that such comments, when coupled with the twenty-seven year sentence that the court imposed, created the appearance that the court punished Marsham for exercising his constitutional right to go to trial. *Id.* The Third Circuit vacated Marsham's sentence and remanded for a new sentencing before a different judge "[b]ecause 'public confidence in the judicial system mandates, at a minimum, the appearance of neutrality and impartiality in the administration of justice.'" *Id.* (citing *Alexander v. Primerica Holdings*, 10 F.3d 155, 157 (3d Cir.1993)). The court noted that it took such action in order to remove the appearance of partiality, not because the court believed that the trial judge, in fact, punished Marsham for proceeding to trial. *Id.*

■ Applying such Supreme Court and Third Circuit precedent to the present case, the court finds that the trial court committed constitutional error by improperly considering as a sentencing factor petitioner's decision to exercise his constitutional right to trial by jury rather than accept the Commonwealth's plea offer. Like the error committed in *Moskovits*, the trial judge in the case at bar made constitutionally impermissible comments in the context of setting forth her reasons for imposing a sentence above the mandatory minimum. Like the sentencing court in *Walker*, it appears that Judge Hughes imposed the maximum sentence in punishment for petitioner's decision to proceed to trial. Moreover, like the sentencing court in *Marsham*, the comments of Judge Hughes during sentencing regarding petitioner's choice to go to trial create the appearance of partiality.

During the sentencing hearing, the court seemed incredulous that petitioner would choose to exercise his right to a trial under the circumstances of the case. The court said that it "begged" petitioner to take the Commonwealth's plea offer and chastised petitioner for "put[ting] [the victim's] family through this extremely extraordinarily unnecessary trial." (N.T. 1/9/09 at 24, 25.) Furthermore, the court reprimanded petitioner for his choice to proceed to trial rather than plead guilty. The trial court stated: "I would have expected a man of your stature not to make a family go through that incredibly painful trial for a case that was not winnable." *Id.* at 26. The court also remarked that the "Commonwealth made you what I deemed to be a cake offer. It was a cake offer." *Id.* In noting that petitioner rejected the plea agreement and the court's offer to make special arrangements for petitioner's medical treatment, the court stated, "[y]ou threw all of that back and you rolled the dice." *Id.* The court also commented on what it perceived as a lack of responsibility and remorse, then explained that the legislature created a mandatory minimum sentence because a defendant in another case "felt he shouldn't be punished because he was a leading citizen." *Id.* at 27. The court then commented that petitioner "had that opportunity to get less [than the minimum sentence]. It's not appropriate to give you a three to six minimum. It's really not." *Id.* The court then imposed the maximum sentence. These comments made in the context of sentencing show that Judge Hughes gave undue consider-

ation to petitioner's decision to reject the plea offer and proceed to trial. The court's comments demonstrate that petitioner's refusal to plead guilty and insistence on a jury trial impermissibly influenced the court's decision to impose the maximum sentence.

In cases where petitioners have unsuccessfully presented a claim of judicial vindictiveness, the facts show that the judicial comments at issue were *not* made in the sentencing context. Such cases are inapposite to the case at bar, where the comments at issue *were* made during the sentencing hearing. *Cf. Burrell v. Tennis*, 2010 WL 3783049, at *9–10 (E.D.Pa. Mar. 31, 2010) (finding no evidence to support the claim that the trial court sentenced petitioner harshly based on the fact that petitioner rejected a plea offer where trial judge's comments concerning petitioner's rejection of a plea offer were made in the context of reviewing pre-trial motions and occurred two months before sentencing), *approved and adopted, Burrell v. Tennis*, 2010 WL 3719095 (E.D.Pa. Sept. 21, 2010) (Bartle, J.). *See also U.S. v. Brown*, 385 Fed.Appx. 147, 148–49 (3d Cir.2010) (not precedential) (finding no evidence of vindictiveness on the part of the District Court where the sentencing judge explained that the lengthy sentence was "necessary to act as a deterrent" given the defendant's long and violent criminal history; his lack of "respect for the law, for the lives of police officers[,] or the citizens of Philadelphia[;]" and his lack of contrition). In the present case, the trial judge's comments that she "begged" petitioner to "take the Commonwealth's offer which was less than the mandatory minimum" and that she "would have expected a man of [petitioner's] stature not to make a family go through that incredibly painful trial for a case that was not winnable" after petitioner was presented with a "cake offer" demonstrate vindictiveness on the part of the trial court. Petitioner was punished for exercising his right to trial and rejecting the Commonwealth's plea offer. Given the foregoing, the court recommends that the petition for a writ of habeas corpus be conditionally granted so that the state court can re-sentence petitioner in accordance with the Constitution.[11]

## III. CONCLUSION

For all of the above reasons, the court makes the following:

### RECOMMENDATION

AND NOW, this 17th day of August, 2012, the court respectfully recommends that the petition for a writ of habeas corpus be **GRANTED,** and that the court order the Commonwealth of Pennsylvania to release petitioner from custody should he not be re-sentenced within ninety (90) days of the date of the order granting the writ of habeas corpus.[12]

---

**11.** Respondent contends that if the court grants the habeas petition, petitioner has been convicted of Homicide by Motor Vehicle (DUI) which carries a minimum sentence of three to six years and a maximum sentence of five to ten years. (Supp. Resp. at 4–5.) As such, the District Attorney avers that petitioner is not eligible to be re-sentenced to the two and one-half to five year sentence originally offered by the Commonwealth in exchange for petitioner's guilty plea, as that would fall below the legal minimum. *Id.* However, re-sentencing petitioner is a matter for the state court and this court will not comment on the appropriate state court remedy. *See McKeever v. Warden SCI–Graterford*, 486 F.3d 81, 85 (3d Cir.2007) (district court was correct in granting the writ of habeas corpus, but leaving the precise remedy in the hands of the Commonwealth).

**12.** *See Wilkinson v. Dotson*, 544 U.S. 74, 86, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (Scalia, J., concurring) ("[T]he prisoner who shows that his sentencing was unconstitutional is actually entitled to release, because the judgment pursuant to which he is confined has been invalidated; the conditional writ serves only to 'delay the release . . . in order

Respondent may file objections to this Report and Recommendation. *See* Loc. R. Civ. P. 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

to provide the State an opportunity to correct the constitutional violation' ") (citing *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)). *See also Frey v. Fulcomer*, 132 F.3d 916, 925 (3d Cir.1997) (remanding to district court "with instructions to grant the writ of habeas corpus conditionally, with the proviso that Pennsylvania shall, within 120 days, conduct a new sentencing hearing in a manner not inconsistent with this opinion, or sentence Frey to life imprisonment.").